IN RE SARAH LYNN OWENS

No. COA97-519

(Filed 17 February 1998)

**1. Contempt of Court § 17 (NCI4th)— news reporter— refusal to answer prosecutor's questions—assertion of privilege—hearing and findings not required**

The trial court complied with the requirements of N.C.G.S. § 5A-14 in imposing criminal contempt sanctions against a news reporter after she clearly asserted the privilege argument, the trial court rejected the argument and instructed the reporter to answer the prosecutor's questions regarding an interview with the attorney of a murder suspect, and the reporter subsequently refused to answer the prosecutor's questions. Notice and a formal hearing were not required when the trial court promptly punished an act of contempt in its presence, and findings of fact and conclusions of law were not required since there was no factual determination for the trial court to make.

**2. Constitutional Law § 115 (NCI4th); Evidence and Witnesses § 2604 (NCI4th)— news reporter—testimony in criminal proceeding—no qualified privilege**

A news reporter did not have a qualified privilege to refuse to testify in a criminal proceeding regarding nonconfidential information obtained from a nonconfidential source. A qualified privilege was not required by the First and Fourteenth Amendments to the U.S. Constitution, Article I, § 14 of the N.C. Constitution, or public policy.

Appeal by Sarah Lynn Owens from conviction of criminal contempt entered 7 February 1997 by Judge Robert L. Farmer in Wake County Superior Court. Heard in the Court of Appeals 27 October 1997.

Karen Boychuk was found dead on 31 December 1995. Her husband, William James Boychuk, reported to police that he and his wife had been struck by a vehicle on a Cary Parkway bridge. During the police investigation into his wife's death, Boychuk hired G. Bryan Collins to represent him. Boychuk was later indicted for the murder of his wife.

During a hearing in Wake County Superior Court, Assistant District Attorney R. Thomas Ford announced his intention to introduce into evidence comments made by Collins to the media which contradicted Boychuk's earlier account of the sequence of events. During several media interviews, Collins reported that Boychuk stated that after being hit by the car he went down the embankment looking for his wife and was knocked unconscious when he slipped and fell. Initially, Boychuk reported to the police that he was knocked unconscious after being hit by the car. The State asserted that the differing accounts of when Boychuk was knocked unconscious were admissible evidence of "consciousness of guilt." Boychuk filed a motion *in limine* requesting that the evidence be found inadmissible on grounds that it was irrelevant and deprived him of his right to counsel.

The State subpoenaed Sarah Lynn Owens, a television reporter, and two newspaper reporters to testify at the hearing on the motion *in limine*. A motion to quash the subpoena was filed on behalf of all three reporters, who asserted a qualified privilege under the First Amendment of the United States Constitution and Article I, § 14 of the North Carolina Constitution and a lack of relevant information

**IN RE OWENS**

[128 N.C. App. 577 (1998)]

due to uncertainty regarding Collins' authorization to speak for Boychuk.

After Owens was sworn in, the following dialogue ensued:

Mr. Ford: I take it you were a general reporter or reporter who goes out of the station to gather news?

Ms. Owens: Your Honor, I apologize. I respectfully decline to answer that question.

Mr. Ford: Well, I don't know how this lady could possibly have any privilege whatsoever in anybody's eyes about what kind of work she did at that time.

Court: You may answer the question. The Court directs you to answer the question.

Ms. Owens: I mentioned earlier I was a reporter.

Mr. Ford: Okay. Well, maybe I'm the one that's ignorant, but do all the reporters for TV stations go out and gather news, or do some of them, or is it just the anchor people that stay in the place?

Ms. Owens: Reporters gather the news.

Mr. Ford: Okay. Did you have occasion as pursuant to your employment to gather news by taking a statement from Mr. Collins in January of 1996?

Ms. Owens: Mr. Ford, I respectfully decline to answer the question.

Mr. Ford: Ma'am, you went on a TV news broadcast, did you not, in person, and aired footage from somewhere of Mr. Collins, did you not? Let me ask you this. Were you in the courtroom earlier when we played a clip of a video tape?

Ms. Owens: I decline to answer any more of the questions.

Mr. Ford: Well, Ms. Owens, are you telling me that you won't even answer the question of whether or not you interviewed this—or you broadcast news purporting to be an interview with Mr. Collins?

Ms. Owens: I will not answer any other questions.

Mr. Ford: Your Honor, I'm going to ask that this witness be instructed to answer my questions.

Court: Answer the question asked to you by the Assistant District Attorney. If not, you'll be subject to contempt and possible jail sentence.

Ms. Owens: Your Honor, I apologize.

Court: Thirty days in jail. You're in the hands of the custody of the Sheriff. Take her away and lock her up.

At the conclusion of the hearing, the court denied the motion to exclude the statements made by Collins and also reduced Owens' jail sentence from thirty days to two hours, at which point she was released from jail. She subsequently filed a notice of appeal.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Norma S. Harrell, for the State.*

*Smith Helms Mulliss & Moore, L.L.P., by Jonathan E. Buchan, T. Jonathan Adams, and James G. Exum, for contemner, Sarah Lynn Owens.*

*Everett Gaskins Hancock & Stevens, L.L.P., by Hugh Stevens and C. Amanda Martin; and Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Wade H. Hargrove and Mark J. Prak, for amici curiae, The North Carolina Press Association, Inc., Gannett Newspapers, Inc., The Associated Press, Knight Publishing Company, Evening Post Publishing Co., Freedom Communications Inc., and The New York Times Co.*

ARNOLD, Chief Judge.

At issue before this Court is the imposition of direct criminal contempt sanctions against a subpoenaed reporter who refused to testify regarding non-confidential information from a non-confidential source. As her first assignment of error, Owens argues that the trial court failed to give her an adequate opportunity to respond to the charges of contempt, found no facts supporting the imposition of a contempt sanction, and failed to indicate the burden of proof the court applied as required by N.C. Gen. Stat. § 5A-14(b) (1986). She also contends that the trial court erred in failing to recognize a news reporter's qualified privilege to refuse to testify.

[1]   Addressing the argument that the trial court failed to allow Owens an opportunity to respond, we note that the official comments to N.C. Gen. Stat. § 5A-14 state that its provisions are not intended to

require a hearing, or anything approaching a hearing. Instead, the requirements of the statute are meant to ensure that the individual has an opportunity to present reasons not to impose a sanction. We conclude that Owens did have such an opportunity.

After being subpoenaed, Owens filed a motion to quash and appeared through counsel and argued that her testimony was privileged. The trial court denied the motion. Prior to Owens' testimony, and in her presence, the trial judge also expressly told another testifying reporter who asserted the privilege that "I've already ruled twice that privilege does not exist for you all in these kinds of situations." Owens clearly was on notice that the trial court had considered the privilege claim and rejected it. Before holding her in contempt, the trial judge specifically warned Owens that her failure to answer questions would subject her to contempt sanctions. Her refusal to answer the prosecutor's questions was therefore a willful and deliberate act constituting direct contempt. *In re Williams*, 269 N.C. 68, 75, 152 S.E.2d 317, 323, *cert. denied*, 388 U.S. 918, 18 L. Ed. 2d 1362 (1967). The fact that Owens refused to testify because of her belief that the refusal was privileged is irrelevant. *Id.*

Owens contends that *O'Briant v. O'Briant*, 313 N.C. 432, 329 S.E.2d 370 (1985), dictates that a hearing is required in order to comport with due process principles. We disagree with this interpretation of *O'Briant. O'Briant* requires that notice and a hearing be given only when a court does not act immediately to punish acts constituting direct contempt. *Id.* at 436, 329 S.E.2d at 373. Notice and a formal hearing are not required when the trial court promptly punishes acts of contempt in its presence.

Owens also argues that case law has interpreted the statute as requiring that the trial court make explicit findings of fact and conclusions of law that she was in contempt beyond a reasonable doubt. *State v. Verbal*, 41 N.C. App. 306, 254 S.E.2d 794 (1979). The purpose of this requirement, however, is to ensure that the judicial officer considered any excuse and found it inadequate. *Id.* at 307, 254 S.E.2d at 795. In this case, there was simply no factual determination for the trial court to make. It is clear that Owens asserted her privilege argument, that the trial court rejected such an argument and instructed her that she would be held in contempt for refusing to answer the prosecutor's question, and that she subsequently refused to answer any questions. Although she may have acted in good faith, there is no factual dispute that Owens willfully disobeyed the trial court's order.

As the State correctly notes, an attorney late to court, as in *Verbal*, may have an explanation for being tardy. An explicit finding that the trial court considered and rejected such an excuse in *Verbal* was necessary for a determination of whether the contempt sanction was legally valid. In the instant case, Owens' justification for not complying with the trial court's order is clear from the record. We hold, therefore, that under these facts the requirements of the statute were met. *Cf. State v. White*, 85 N.C. App. 81, 85, 354 S.E.2d 324, 327 (1987), *affirmed*, 322 N.C. 506, 369 S.E.2d 813 (1988) (holding any error in trial court's failure to make required findings under N.C. Gen. Stat. § 15A-1064 when declaring a mistrial was harmless error because the grounds for the ruling were clear to the trial court and to the appellate court).

[2] The next question is whether the trial court erred in failing to recognize a news reporter's qualified privilege grounded in the First and Fourteenth Amendments to the United States Constitution and in Article 1, § 14 of the North Carolina Constitution. The seminal case on a reporter's testimonial privilege is *Branzburg v. Hayes*, 408 U.S. 665, 33 L. Ed. 2d 626 (1972), which addressed whether reporters have a special privilege to refuse to testify and reveal confidential sources to grand juries.

The Court began its analysis by noting a long line of cases stating that the First Amendment does not invalidate every burden on the press that may result from the application of rules or laws of general applicability. *Id.* at 682, 33 L. Ed. 2d at 640. After acknowledging that reporters had no privilege at common law, the Court declined to recognize either an absolute or qualified privilege for the press because, the Court reasoned, a fundamental function of government is to provide effective law enforcement to provide for the security of the person and property of the individual. *Id.* at 690, 33 L. Ed. 2d at 644-45. Because of this important governmental interest, the Court found:

> no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or *criminal trial*.

*Id.* at 690-91, 33 L. Ed. 2d at 645 (emphasis added).

**IN RE OWENS**

[128 N.C. App. 577 (1998)]

Owens contends that Justice Powell's concurrence, when read in conjunction with the dissent, establishes a majority view recognizing a reporter's qualified privilege and requiring a case by case balancing test. In order to overcome the privilege, she contends that the government must show that the requested information is highly relevant and necessary to its case and not obtainable from other available sources.

As evidence of an accepted qualified privilege, Owens cites portions of Justice Powell's concurrence calling for trial courts to strike a proper balance between the First Amendment and the obligation of all citizens to give relevant testimony regarding criminal conduct. *Branzburg*, 408 U.S. at 710, 33 L. Ed. 2d at 656 (Powell, J., concurring). As further support for her position, Owens points to Justice Powell's statement that state and federal authorities should not be allowed "to 'annex' the news media as 'an investigative arm of government.' " *Id.* at 709, 33 L. Ed. 2d at 656 (Powell, J., concurring). She concludes her argument by citing numerous cases supporting this interpretation and recognizing a qualified privilege for the press.

We reject this interpretation of *Branzburg*. The test Owens espouses today is a similar formulation of the qualified privilege argued by Justice Stewart in his dissent. *Branzburg*, 408 U.S. at 740, 33 L. Ed. 2d at 674-75 (Stewart, J., dissenting) (arguing for privilege that only can be overcome upon a showing that the information sought is relevant, the witness in question possesses the information, and the information is not available from an alternative source). The Court expressly rejected Justice Stewart's proposed balancing test and addressed the difficulties inherent in administering such a privilege. *Id.* at 703-04, 33 L. Ed. 2d at 653-54 (noting difficulties in determining who the privilege would cover and in placing trial courts in the unenviable position of having to weigh the value of different criminal laws in order to determine the proper balance with the First Amendment).

Owens is correct that many courts have recognized some form of a qualified privilege for the press. While these cases do recognize such a privilege, they overwhelmingly involve civil cases and often deal with reporters asked to divulge confidential sources or materials. In the case now before us, Owens was asked questions related to a criminal proceeding. The Supreme Court in *Branzburg* expressly recognized the state's compelling interest in pursuing criminal investigations. Furthermore, none of the information sought to be com-

**IN RE OWENS**

[128 N.C. App. 577 (1998)]

pelled from her was of a confidential nature or from a confidential source. The State merely sought confirmation from Owens of statements made by Collins in a previously broadcasted interview.

Owens finally argues that there are important public policy considerations which weigh in favor of recognizing such a privilege. She argues that a growing number of reporters are subpoenaed each year and that this will eventually undermine the reporter's relationship with important sources. The Supreme Court considered and rejected these same arguments in *Branzburg*. Regarding the argument that failure to recognize a reporter's privilege would eventually serve to dry up sources and hamper the free flow of information, the Court stated:

> [T]his is not the lesson history teaches us. As noted previously, the common law recognized no such privilege, and the constitutional argument was not even asserted until 1958. From the beginning of our country the press has operated without constitutional protection for press informants, and the press has flourished. The existing constitutional rules have not been a serious obstacle to either the development or retention of confidential news sources by the press.

*Branzburg*, 408 U.S. at 698-99, 33 L. Ed. 2d at 649. Regarding the claim that the number of subpoenas issued against the press has greatly multiplied, the Court stated that such an argument was "treacherous grounds" for fashioning such an expansive reading of the First Amendment that would have widespread implications for courts, grand juries, and prosecutors nationwide. *Id.* at 699, 33 L. Ed. 2d at 650.

In conclusion, we hold that the trial court complied with the requirements of G.S. § 5A-14 and properly declined to recognize a news reporter's qualified privilege to refuse to testify in a criminal proceeding regarding non-confidential information obtained from a non-confidential source.

Affirmed.

Judges McGEE and SMITH concur.