TIMOTHY L. PEACHES and DIERDRE R. PEACHES, Plaintiffs v. SEAN A. PAYNE and BRANDY FOLSON, Defendants

No. COA99-821

(Filed 15 August 2000)

**Contempt— criminal—attorney—no opportunity to respond to charges**

The trial court erred by holding plaintiff's trial attorney in criminal contempt based on contemnor's questioning of the rulings of the court and allegedly showing disrespect for the court, because the trial court did not comply with the statutory requirements when it failed to give contemnor a summary opportunity to respond to the charges and to present reasons not to impose a sanction as required by N.C.G.S. § 5A-14(b).

Appeal by contemnor William E. Moore, Jr., from order entered 11 March 1999 by Judge Marvin K. Gray in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 April 2000.

*Michael F. Easley, Attorney General, by Daniel P. O'Brien, Assistant Attorney General, for the State.*

*Maxwell Freeman and Bowman, P.A., by James B. Maxwell, for contemnor-appellant.*

EDMUNDS, Judge.

Contemnor William E. Moore, Jr., appeals the trial court's finding of criminal contempt and order that he pay the costs of the underlying action as a sanction. We reverse.

The contemnor's actions and resulting court rulings that are the subject of this appeal occurred during a personal injury trial that began 8 March 1999. The trial court initially instructed the attorneys for both parties to select the jury using the procedure approved in *State v. Phillips*, 300 N.C. 678, 268 S.E.2d 452 (1980) and warned them: "[I]f you don't select that jury, in accordance with *State Vs. Phillips*, you're going to hear from me." (In *Phillips*, the court stated that counsel should not attempt to indoctrinate jurors, stake them out or establish rapport with them during *voir dire*, and that when possible, questions should be asked collectively of the entire panel.) The next day, after jury selection had been completed, the trial court chided both attorneys:

You took too long selecting a jury yesterday. Ought to be done in about two hours.

. . . .

. . . You were [too] verbose, as lawyers tend to be. And, you didn't follow *State Vs. Phillips*. So, the reason I'm bringing this to your attention is the next time I have a case with either one of you, you're on notice.

Contemnor called plaintiff Timothy L. Peaches (Mr. Peaches) as his first witness. He established on direct examination that Mr. Peaches saw defendants' automobile "from [his] left, careen into—on Independence Boulevard, . . . [go] off into the grass, into the other lane, [spin] around; continue[] up in front of [plaintiffs] and on-going traffic, turned sideways." Contemnor then asked Mr. Peaches' opinion of the speed of defendants' car. When defense counsel objected on the grounds of improper foundation, the trial court sustained the objection. Contemnor asked additional questions in an attempt to lay a proper foundation, then asked Mr. Peaches' opinion of the speed of defendants' car four more times. Each time, the trial court sustained defendants' objections. Contemnor requested a bench conference, which was not recorded. The jury remained in the courtroom during the bench conference. When contemnor resumed his direct examination, the trial court interrupted him and excused the jury. The following exchange ensued:

PEACHES v. PAYNE

[139 N.C. App. 580 (2000)]

THE COURT: Now Mr. Moore, if you want to be, in the future, sure of what the law is before you come up here to argue with the Court about it. What you stated the law to be is not the law. I can cite you any number of cases that would so indicate. You should have been prepared to handle[] that before you began trial of this case.

MR. MOORE: Well, Your Honor, I am sure of what I know of the law. I don't have a cite because it's a pretty basic principle with my 18 years of practice.

THE COURT: It's not.

MR. MOORE: I have tried many cases where that question has been asked and answered and the objection has been overruled.

Now Judge, I may be wrong on the law and what I remember of it. But if I brought in every case authority for every basic principle, I would be able to fill the courtroom up with my library.

THE COURT: Well, the OBJECTION HAS BEEN SUSTAINED because you have not laid the proper foundation.

MR. MOORE: I understand that.

THE COURT: You have still not laid a proper foundation.

MR. MOORE: Obviously, Your Honor, I have overlooked the part of the foundation that the Court is relying upon.

THE COURT: I'm relying on the law.

MR. MOORE: Well, Your Honor, I understand that. I certainly respect your ruling. But, I disagree with you. And, I will certainly do my best to figure out what it is I've left out of the foundation and do my best to represent these folks and get the evidence in.

THE COURT: I don't want to waste a lot more time with bench conferences.

MR. MOORE: Nor do I, Your Honor. But, I certainly—

THE COURT: I want to make it clear to you, now. I don't want any questions raised about my rulings because if you do, you're going to be in [the baliff]'s custody for a while. And, I wanted to make that clear to you, while the jury was out.

PEACHES v. PAYNE

[139 N.C. App. 580 (2000)]

MR. MOORE: I understand, Your Honor. However, I also have a duty to zealously represent my clients and I will do what I have to do to try to get the evidence in.

THE COURT: Well, you just continue on, at your own peril.

MR. MOORE: Judge, the reason I asked for a conference, I understood your ruling is based on foundation. I thought I had laid a foundation. Obviously, I have not. I will attempt to do so, Your Honor.

However, I will say that I find it, if the point is for us to move on and not take up a lot of time with bench conferences, a basic question of—

THE COURT: That is the point.

MR. MOORE: —a basic question of the lay witness' opinion of the speed of the vehicle that he saw, once it passed him, and that he observed it traveling at some speed, has been admitted in every court I've practiced in, in these types of cases. I might be missing something.

THE COURT: I don't believe that's the case, Mr. Moore.

MR. MOORE: Well, Judge,—

THE COURT: If it has, it's erroneous.

MR. MOORE: Your Honor, that's certainly—well, all right, sir. Let me see if I can't find another way to present the evidence for these folks and we'll go to the next one.

Contemnor made two more unsuccessful attempts on direct examination to elicit Mr. Peaches' estimate of defendants' speed. However, on re-direct, when contemnor established that Mr. Peaches observed defendants' automobile for approximately 150 yards and about six to seven seconds, the trial court allowed him to answer contemnor's question about speed.

Later that morning, after the trial court excused the jurors for their lunch break, the court had the following conversation with the attorneys:

THE COURT: All right. Mr. Bolster, Mr. Moore finally got his question right. You ou[gh]t to read the case of _Beaman Vs. Sheppard._

MR. MOORE: Okay.

THE COURT: 35N.C.Ap.73 [sic], which says, among other things, that 80 feet is enough time to have an opportunity to observe to give an opinion as to speed.

. . . .

MR. MOORE: Your Honor, I would like to apologize, for not having my case cites better prepared on that issue. I didn't anticipate a problem.

. . . .

THE COURT: I'm looking at some books here that I started keeping when I started practicing law in 1960. And, they're up to date, to the last advance sheet. No reason why y'all can't.

MR. MOORE: I did have a trial notebook, Your Honor. I picked up the wrong one. I appreciate the Court's patience.

The rest of 9 March 1999 consisted of the direct examination and part of the cross-examination of plaintiffs' expert chiropractic witness. Although contemnor made occasional objections, we see nothing in the transcript to suggest antagonism between contemnor and the trial court. The trial court sustained one of contemnor's objections and held a thorough *voir dire* before overruling another.

The trial resumed the next morning. Again, although contemnor raised occasional objections, we see no indication in the transcript of tension between contemnor and the trial court. However, during redirect examination of plaintiffs' chiropractor, on request of contemnor, the court took judicial notice of N.C. Gen. Stat. § 90-157.2 (1999) ("Chiropractor as expert witness"), which sets forth matters to which a properly qualified chiropractor may testify. Contemnor then asked the chiropractor his understanding of the meaning of the terms "etiology," "diagnosis," and "disability." Although defense counsel did not object to this testimony, the trial court *sua sponte* instructed the jury "not to consider the answers that this witness gave with respect to the last statute," and contemnor objected "for the record."

After contemnor's re-direct examination of the chiropractor, defendants' attorney conducted a re-cross examination. When contemnor then sought an opportunity for re-re-direct examination, the following exchange occurred:

MR. MOORE:  Very briefly, may I, Your Honor?

THE COURT:  No, sir.

MR. MOORE:  OBJECTION, FOR THE RECORD.

THE COURT:  All right. Let the record show that this witness has been examined and cross-examined and direct examined and re-direct examined. The Court, in its discretion and in [its] supervisory power to conduct the trial of the case . . . is not allowing any further questions by counsel for either side.

MR. MOORE:  Yes, Your Honor. Let the record also reflect new matters were raised on cross-examination, to which plaintiff's counsel has not been given an opportunity to examine this witness. And, that's the basis of my objection.

THE COURT:  Take the jury out, please sir.

{The following proceedings take place in open court, outside the presence of the jury.}

THE COURT:  Come down, Doctor.

Mr. Moore, on several occasions this morning, you have questioned the rulings of the Court. And, one of those occasions was when you were asking the doctor about his interpretation of a statute, which clearly, he was not qualified to do. And, you objected to that.

And, so, we're going to continue this case until in the morning at 9:30. And, in the meantime, you're in the custody of the sheriff, for your disrespect toward this Court.

We will be in recess until 9:30 in the morning. Take him into custody, Mr. Sheriff.

Contemnor was incarcerated until 5:00 p.m. that day. The next morning, contemnor made a handsome apology to the trial court and to the parties for any action or conduct that the court perceived as being disrespectful, and the court graciously accepted the apology. However, when contemnor advised that his clients hoped the trial would continue, the trial court instead declared a mistrial and issued an order that was both recorded in the transcript and later drawn up in writing by the clerk of court. Although the court made findings of fact as to contemnor's behavior, neither the oral nor the written order included a finding that contemnor had been given an opportunity to

be heard nor a summary of any response contemnor made. In light of our holding, we need not address the court's findings of fact in its order.

The controlling issue before us is whether the trial court fully complied with statutory requirements before holding contemnor in contempt. Except under circumstances not pertinent to the case at bar, punishment may not be imposed for criminal contempt unless "the act or omission was preceded by a clear warning by the court that the conduct is improper." N.C. Gen. Stat. § 5A-12(b)(2) (1999). In addition, where the imposition of a penalty for contempt is, as here, summary (i.e., "immediate," *Black's Law Dictionary* 1449 (7th ed. 1999)), "[b]efore imposing measures . . . the judicial official *must* give the person charged with contempt summary notice of the charges and a summary opportunity to respond and must find facts supporting the summary imposition of measures in response to contempt." N.C. Gen. Stat. § 5A-14(b) (1999) (emphasis added).

These pertinent statutory requirements have been interpreted in two apposite opinions of this Court. In *State v. Verbal*, 41 N.C. App. 306, 254 S.E.2d 794 (1979), we reversed a trial court's determination that an attorney was in contempt for being eighteen minutes late in returning to court after a lunch recess. We held:

> [I]t is implicit in [N.C. Gen. Stat. § 5A-14(b)] that the judicial official's findings in a summary contempt proceeding should clearly. reflect that the contemnor was given an opportunity to be heard, along with a summary of whatever response was made and that judicial official's finding that the excuse or explanation proffered was inadequate or disbelieved.

*Id.* at 307, 254 S.E.2d at 795. Because the attorney in *Verbal* was not given an opportunity to be heard, and because the trial court's findings did not "indicate what, if any, standard of proof was applied," we reversed the contempt finding. *Id.*

More recently, in *In re Owens*, a news reporter was subpoenaed to testify at a motion *in limine*, which was being conducted to determine the admissibility of statements made by a defendant to the reporter. 128 N.C. App. 577, 496 S.E.2d 592 (1998), *aff'd per curiam*, 350 N.C. 656, 517 S.E.2d 605 (1999). The reporter refused to testify, claiming a qualified privilege, and was held in contempt. The reporter appealed, arguing in part, that she had not received a hearing before she was held in contempt. We noted that "the official comments to

N.C. Gen. Stat. § 5A-14 state that its provisions are not intended to require a hearing, or anything approaching a hearing. Instead, the requirements of the statute are meant to ensure that the individual has an opportunity to present reasons not to impose a sanction." *Id.* at 580-81, 496 S.E.2d at 594. We held that the contemnor in *Owens* had ample opportunity during her testimony at the hearing on the motion *in limine* to present on the record her reasons for declining to comply with the court's order and affirmed the finding of contempt.

Applying these holdings to the case at bar, we conclude that the trial court failed to comply with all the statutory requirements by failing to give contemnor a "summary opportunity to respond." N.C. Gen. Stat. § 5A-14(b). Although this Court held in *Owens* that "[n]otice and a formal hearing are not required when the trial court promptly punishes acts of contempt in its presence," *Owens*, 128 N.C. App. at 581, 496 S.E.2d at 595, we also held that the statute does guarantee a potential contemnor a chance to respond to the charges, *id.* at 580-81, 496 S.E.2d at 594. This holding is consistent with the mandatory language of the statute. *See* N.C. Gen. Stat. § 5A-14(b).

The transcript reveals that the court advised contemnor that, because he had questioned the rulings of the court and shown disrespect for the court, he was in the bailiff's custody. Court was immediately recessed without contemnor having been given "an opportunity to present reasons not to impose a sanction." *Owens*, 128 N.C. App. at 581, 496 S.E.2d at 594; *see also* 1 *North Carolina Trial Judges' Bench Book for Superior Court* sec. I, ch. 2, pt. D(2)(a)-(b) (3d ed. 1999).

Trial judges must have the ability to control their courts. However, because a finding of contempt against a practitioner may have significant repercussions for that lawyer, judges must also be punctilious about following statutory requirements. Because the trial court failed to follow the procedure mandated by N.C. Gen. Stat. § 5A-14(b), we reverse the finding of contempt.

Reversed.

Judges GREENE and McGEE concur.