ELMORE, Judge.
 

 Christopher Korfmann (appellant) appeals from the trial court's order finding him in direct criminal contempt for using a cell phone
 during jury deliberations and sentencing him to thirty days in prison. After careful consideration, we reverse and vacate the order.
 

 I. Background
 

 On 8 June 2015, appellant was selected to serve as a juror for a civil trial in Wilson County Superior Court. After the trial and during jury deliberations, the trial judge received a note from the jury room. As a result, he recalled the jury to the courtroom and asked the foreperson, who happened to be appellant, "Was a cell phone utilized by one of the jurors in this matter, yes or no?" Appellant responded, "Yes ... That was myself." After a bench conference with the attorneys, the following colloquy took place:
 

 THE COURT: Sir, were you using that cell phone during this trial?
 

 THE FOREPERSON: No, sir.
 

 THE COURT: How was the cell phone utilized?
 

 THE FOREPERSON: Yesterday when I left the courthouse.
 

 THE BAILIFF: Stand up, sir. (Foreperson stood.)
 

 THE FOREPERSON: Yes, sir. Yesterday when I left the courthouse I went to lunch and while I was at lunch I used the note taking program on my cell phone to record my notes because I didn't have a piece of paper to write down.
 

 THE COURT: Your notes, where did the notes come from?
 

 THE FOREPERSON: The notes, the things that I wanted to remember from the trial just so I could think about it and that I wouldn't forget if I had-there was a few questions that I had that I wanted to ask today during deliberation and I wrote down those questions that I wanted to ask so I wouldn't forget.
 

 THE COURT: And who were you going to ask those questions of?
 

 THE FOREPERSON: They were the questions I was planning to ask you, sir.
 

 THE COURT: You were going to ask me the questions?
 

 THE FOREPERSON: Well, no. I was going to ask the Court because they were questions I didn't feel were answered during-
 

 THE COURT: Do you understand what your function is as a juror?
 

 THE FOREPERSON: Yes, sir.
 

 THE COURT: So why would you have these questions to ask me, the Court?
 

 THE FOREPERSON: Well, there were-perhaps I misspoke. They were questions that I had about the case, that I wrote down the questions simply because I didn't have a pen and paper to write down the questions and it was more, it was, aside from questions it was things that I wanted to remember that-
 

 THE COURT: Did you hear my instruction that it is your duty to recall and remember?
 

 THE FOREPERSON: I did, sir, yes.
 

 THE COURT: All right. Have a seat.
 

 (Foreperson sat down.)
 

 THE COURT: Come.
 

 ( [The attorneys] approached the bench and a discussion was held off the record.)
 

 THE COURT: Madam Court Reporter, for the record, at the beginning of this trial the parties agreed further and stipulated further that the jury verdict could go down to ten; thus I did not pick an alternate.
 

 Because of the developments as I understand the developments to have occurred in this jury room in this matter, that is, an individual utilized a cell phone for the purposes of questions, answers, notes or whatever, and then informed the Court that the purpose of his notes were to pose questions
 to the Court when the Court has made it crystal clear that the jury is to rely on their recollection, not their notes, not a cell phone, but their recollection. And then come to find that the party who had utilized technology turns out to be the Foreperson which cause [sic] some problems in the jury room; thus how I got the issue.
 I am going to declare a mistrial in this matter. And this matter will have to be tried again.
 

 It is the Court's responsibility to avoid impropriety as well as the appearance of impropriety. The court system through its citizens that this court system belongs to oftentimes gets a black eye from citizens who are not willing to participate in the court system and to follow the rules that are outlined by them.
 

 This Court takes the strong position that technology is not to be utilized by jurors and, in fact, this jury has been warned several times not to use.
 

 In my opinion the utilization by the juror is blatantly disrespecting the Court's order not to use.
 

 Sir, I think that what I am going to do with you is I am going to send you to Wilson County Jail for 30 days for failing to follow the order given to you by this Court.
 

 The ladies and gentlemen of this jury are now excused. You can get a certificate as to where you have been for the last several days. You are excused.
 

 This gentleman is in your custody.
 

 A "Direct Criminal Contempt/Summary Proceedings/Findings and Order" was entered that same day stating the following:
 

 The court finds beyond a reasonable doubt that during the proceeding the above contemnor willfully behaved in a contemptuous manner, in that the above named contemnor did
 

 DEFENDANT WAS A JUROR IN THE MIDDLE OF DELIBERATIONS AND USED HIS CELL PHONE AFTER BEING INSTRUCTED NOT TO DO SO.
 

 The undersigned gave a clear warning that the contemnor's conduct was improper. In addition, the contemnor was given summary notice of the charges and summary opportunity to respond.
 

 The contemnor's conduct interrupted the proceedings of the court and impaired the respect due its authority.
 

 Therefore, it is adjudged that the above named contemnor is in contempt of court. It is ordered that the contemnor ...
 

 be imprisoned for a term of 30 days in the custody of the Sheriff.
 

 Appellant was taken to the Wilson County Jail where he stayed for six nights before being released on bail. According to appellant, upon his release all of his personal belongings were returned to him with the exception of his phone. Appellant filed notice of appeal on 15 June 2015 and a Motion for Appropriate Relief (MAR) on 19 June 2015. As of the filing of appellant's brief on 7 October 2015, the trial court had not scheduled a hearing for the MAR.
 

 II. Analysis
 

 "[O]ur standard of review for contempt cases is 'whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.' "
 
 State v. Phair,
 

 193 N.C.App. 591
 
 , 593,
 
 668 S.E.2d 110
 
 , 111 (2008) (quoting
 
 State v. Simon,
 

 185 N.C.App. 247
 
 , 250,
 
 648 S.E.2d 853
 
 , 855 (2007) ).
 

 N.C. Gen.Stat. § 5A-11 provides a list of conduct that constitutes criminal contempt. N.C. Gen.Stat. § 5A-11(a)(1)-(10) (2015). Although the trial court's order does not specify which subsection applies, it appears that the court based its order on section 5A-11(a)(3), which states that criminal contempt is the "[w]illful disobedience of, resistance to, or interference with a court's lawful process, order, directive, or instruction or its execution." N.C. Gen.Stat. § 5A-11(a)(3) (2015).
 

 Direct criminal contempt occurs when the act "(1) [i]s committed within the sight or hearing of a presiding judicial official; and (2) [i]s committed in, or in immediate proximity to, the room where proceedings are being held before the court; and (3) [i]s likely to interrupt or interfere with matters then before the court."
 

 N.C. Gen.Stat. § 5A-13(a) (2015). "Any criminal contempt other than direct criminal contempt is indirect criminal contempt and is punishable only after proceedings in accordance with the procedure required by G.S. 5A-15." N.C. Gen.Stat. § 5A-13(b).
 

 On appeal, appellant submits a number of challenges to the trial court's order.
 
 [1]
 
 Assuming without deciding that appellant engaged in
 direct criminal contempt, we hold that the trial court failed to follow the requirements of N.C. Gen.Stat. § 5A-14 and the order must be vacated. Thus, we do not reach each of appellant's arguments.
 

 Appellant argues that "the process used to convict him fell short of the requirements of North Carolina law."
 

 N.C. Gen.Stat. § 5A-14 allows a judge to "summarily impose measures in response to direct criminal contempt[.]" N.C. Gen.Stat. § 5A-14(a) (2015). Before imposing measures in response to direct criminal contempt, though, "the judicial official must give the person charged with contempt summary notice of the charges and a summary opportunity to respond and must find facts supporting the summary imposition of measures in response to contempt. The facts must be established beyond a reasonable doubt." N.C. Gen.Stat. § 5A-14(b) (2015). This Court has previously noted that "the requirements of [ N.C. Gen.Stat. § 5A-14 ] are meant to ensure that the individual has an opportunity to present reasons not to impose a sanction."
 
 In re Owens,
 

 128 N.C.App. 577
 
 , 581,
 
 496 S.E.2d 592
 
 , 594 (1998). Moreover, "imprisonment may not be imposed for criminal contempt, whether direct or indirect, unless: (1) The act or omission was willfully contemptuous; or (2) The act or omission was preceded by a clear warning by the court that the conduct is improper." N.C. Gen.Stat. § 5A-12(b) (2015).
 

 In
 
 Peaches v. Payne,
 
 this Court concluded that "the trial court failed to follow the procedure mandated by N.C. Gen.Stat. § 5A-14(b)," and as a result we reversed the finding of contempt.
 
 139 N.C.App. 580
 
 , 587,
 
 533 S.E.2d 851
 
 , 855 (2000). We reasoned, "The transcript reveals that the court advised contemnor that, because he had questioned the rulings of the court and shown disrespect for the court, he was in the bailiff's custody. Court was immediately recessed without contemnor having been given an opportunity to present reasons not to impose a sanction."
 

 Id.
 

 (quotations omitted).
 

 Here, like in
 
 Peaches,
 
 the transcript shows that the trial court did not advise appellant that he was being charged with contempt and appellant was not provided an opportunity to respond to the charge. Instead, the trial court stated, "Sir, I think that what I am going to do with you is I am going to send you to Wilson County Jail for 30 days for failing to follow the order given to you by this Court." The trial court immediately excused the other jurors, told the bailiff that appellant was in his custody, and announced that court was adjourned
 
 sine die.
 

 The trial court did not give appellant the necessary "summary notice of the charges and a summary opportunity to respond" before imposing
 measures under N.C. Gen.Stat. § 5A-14. The State's argument that appellant "was given notice and an opportunity to explain his actions" is not supported by the transcript. Although appellant was able to respond to the trial judge's preliminary questions, appellant was not given an opportunity to respond to the charge.
 
 See
 
 N.C. Gen.Stat. § 5A-14 (2015). Accordingly, because the trial court failed to comply with the statutory requirements of N.C. Gen.Stat. § 5A-14, we reverse and vacate the contempt order.
 

 In
 
 Peaches,
 
 we stated, "Trial judges must have the ability to control their courts. However, because a finding of contempt against a practitioner may have significant repercussions for that lawyer, judges must also be punctilious about following statutory requirements."
 
 139 N.C.App. at 587
 
 ,
 
 533 S.E.2d at 855
 
 . We point out that a finding of contempt against a citizen, attempting to fulfill
 his civic duty to serve as a juror for the first time, along with a thirty-day jail sentence, may also have significant repercussions.
 

 While the presiding judge is given large discretionary power as to the conduct of a trial, we note that specifically instructing the jury as to certain discretionary decisions may help jurors properly fulfill their role in court. For instance, North Carolina Pattern Jury Instruction 100.70, "Taking of Notes by Jurors," states the following:
 

 While the Rules of Civil Procedure have no statutory analogue to G.S. § 15A-1228, which permits jurors in a criminal case to make notes and take them into the jury room (except where the judge on his own motion or the motion of a party rules otherwise in his discretion), note-taking in civil cases has been left, as a matter of practice, to the sound discretion of the trial judge.
 

 [
 
 If Denied:
 
 In my discretion, members of the jury, you will not be allowed to take notes in this case.]
 

 [
 
 If Allowed:
 
 In my discretion, you will be allowed to take notes in this case.
 

 When you begin your deliberations, you may use your notes to help refresh your memory as to what was said in court. I caution you, however, not to give your notes or the notes of any of the other jurors undue significance in your deliberations. All of the evidence is important. Do not let note-taking distract you. Listen at all times intently to the testimony.
 

 Any notes taken by you are not to be considered evidence in this case. Your notes are only to assist your memory and are not entitled to any greater weight than the individual recollections of other jurors.]
 

 N.C.P.I.-Civil 100.70 (2004).
 

 While "[o]ur trial court judges must be allowed to maintain order, respect and proper function in their courtrooms[,]"
 
 State v. Randell,
 

 152 N.C.App. 469
 
 , 473,
 
 567 S.E.2d 814
 
 , 817 (2002), they must also follow all statutory requirements before imposing a finding of contempt.
 
 See
 

 Peaches,
 

 139 N.C.App. at 587
 
 ,
 
 533 S.E.2d at 855
 
 .
 

 Appellant also claims that, even if he could have been properly held in contempt, confiscation of his phone exceeds the sanctions allowed under North Carolina law. In appellant's affidavit, he states,
 

 After telling me he was sending me to jail, the Judge dismissed everyone. The bailiff took me to a room behind the courtroom. Eventually, I was handcuffed and shackled around my ankles and waste. All my personal belongings were taken. I was told everything would be taken to the jail, other than my phone. The phone was placed in an envelope and put in a locked box in the room. The bailiff told me the Judge would keep the phone and was still deciding whether to destroy it.
 

 The record is devoid of any attempts by appellant to recover his phone. Until appellant applies for his phone's release and is refused, we cannot order the phone to be returned to appellant.
 
 See
 
 N.C. Gen.Stat. § 15-11.1(a) (2015).
 

 III. Conclusion
 

 Because appellant was not given summary notice of the charge against him and was not given an opportunity to respond to the charge, we reverse and vacate the trial court's order.
 

 REVERSED AND VACATED.
 

 Judges McCULLOUGH and INMAN concur.
 

 Appellant argues that he did not violate a court process, order, directive, or instruction; the trial court did not instruct him not to take or use notes; the trial court did not instruct him that he could not use his phone during recesses or deliberations; the evidence does not support the finding he actually used his phone during deliberations; the trial court failed to make the requisite finding of willfulness; and he did not engage in direct criminal contempt.