IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1081

Filed 17 December 2025

Cabarrus County, Nos. 21CRS054366-120, 21CR054367-120, 24CR000169-120, 24CR000170-120, 24CR000171-120, 24CR000172-120, 24CR000173-120, 24CR000174-120

STATE OF NORTH CAROLINA

v.

CINQUAN MARQUECE JACOBS

Appeal by Defendant from Judgments entered 13 May 2024 and Orders entered 14 May 2024 by Judge William Anderson Long, Jr., in Cabarrus County Superior Court. Heard in the Court of Appeals 24 September 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Jonathan D. Jones, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender David S. Hallen, for Defendant-Appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Cinquan Marquece Jacobs (Defendant) appeals from Judgments entered pursuant to jury verdicts finding him guilty of Resisting a Public Officer, Failure to Heed Light or Siren, Reckless Driving, and Speeding. The Record before us tends to reflect the following:

On 20 November 2021, a vehicle passed Officers Bradley Oppy and Sean Honey while going approximately fifteen miles-per-hour over the speed limit. Officer Honey activated the blue lights and siren on his patrol vehicle, but the speeding vehicle did not stop; the officers pursued the vehicle until it eventually turned into the driveway of a house several minutes later.

The driver told Officer Honey he did not have identification. However, he was wearing an employee ID which allowed the officers to identify him as Defendant. Officer Honey arrested Defendant for Resisting a Public Officer, Failure to Heed Light or Siren, Reckless Driving, and Speeding.

In Cabarrus County district court, the district court concluded Defendant had forfeited his right to counsel after two of Defendant's appointed attorneys withdrew from representation. The district court subsequently found Defendant guilty of all charged offenses. Defendant appealed to superior court.

On 6 December 2022, Defendant was appointed counsel in the superior court proceedings. On 28 March 2023, Defendant's counsel made a Motion to Withdraw, alleging Defendant wished to have a new attorney because of a disagreement over filing certain documents with the court. The trial court set a Forfeiture of Counsel Hearing for 30 March 2023.

At the Forfeiture of Counsel Hearing, Defendant stated he did not want to represent himself pro se and continued to question the trial court's jurisdiction. The trial court found Defendant "willfully forfeited his rights to counsel due to his

misconduct and his insisting upon counsel filing frivolous actions or motions not supported by either fact or law[,]" and concluded Defendant had forfeited his right to counsel.

The case proceeded to trial. Defendant repeatedly objected to proceeding without counsel. The trial court threatened to remove Defendant from the courtroom if he "continue[d] to disrupt this trial by referencing counsel."

The jury returned verdicts finding Defendant guilty of all charges. The trial court sentenced Defendant to three consecutive forty-five-day sentences, which were suspended for a consolidated period of twenty-four months of supervised probation, split with three consecutive eleven-day terms of imprisonment.

At sentencing, Defendant asked if he could "put a motion to appeal in[.]" The trial court told Defendant he could "appeal it all you want." Defendant said he would "see [the trial court] in federal court," which the trial court interpreted as a threat:

> [Defendant]: Can I put a motion to appeal in? Motion to appeal.
>
> [Trial Court]: You can appeal it all you want.
>
> [Defendant]: On the record. And can I get a transcript sent to the jail where I'm at? And can I have that on the record too? Both transcripts, the one from last time and the one from this time. Thank you so much.
>
> [Trial Court]: I wish you the best.
>
> [Defendant]: Yeah. I'll see you in federal court, bucko.
>
> [Trial Court]: I'm going to hold you in contempt for that threat. I'm going to add 30 days to the 33.

Defendant then told the trial court to "[a]dd it up, bro[,]" leading to the following exchange:

> [Defendant]: Add it up, bro.
>
> [Trial Court]: And then I'm going to add another 30 to that.
>
> [Defendant]: Add some more.
>
> [Trial Court]: That's 90.
>
> [Defendant]: And more.
>
> [Trial Court]: 120.
>
> [Defendant]: Let me get more.
>
> [Trial Court]: 150.
>
> [Defendant]: More.
>
> [Trial Court]: 180.  That's going to be 100 days of contempt, six for each threat or response, and that's going to run consecutively. 180, that's six contempts [sic].

The trial court then took a one-minute recess before briefly coming back on the Record to clarify it "felt like contempt was appropriate given . . . what the Court deemed to be a threat and then an ongoing response engaging the Court in debate and argument and further threat." At this point, the trial court concluded the proceedings.

The following day, Defendant was brought back before the trial court to address a sentencing error.  The trial court adjusted Defendant's sentences to two consecutive forty-five-day sentences which were immediately suspended for a

consolidated period of twenty-four months of supervised probation.[1]  Each sentence included an active term of eleven days of imprisonment as a special condition of probation.

The trial court then addressed Defendant's allegedly contemptuous behavior at sentencing the previous day.  The trial court stated it had not "decided in final" how it was going to handle the issue and was giving Defendant "an opportunity to be heard on [sic]."  Defendant argued his statement had not been a threat and he was "just trying to exercise [his] right to go to a higher court[.]"  The trial court decided Defendant's behavior warranted six consecutive thirty-day sentences for criminal contempt, as it had indicated the day prior.

The trial court entered six corresponding Criminal Contempt Orders finding Defendant "willfully display[ed] behavior during court that directly interrupted regular court proceedings" and "willfully disrespect[ed] the authority of the court."  Each Order sentenced Defendant to thirty days in custody.[2]  Defendant gave oral Notice of Appeal from the Criminal Contempt Orders.

## Issues

---

[1] The Judgments contained in the Record are not file-stamped.  However, the Statement of Organization of Trial Tribunal in the settled Record reflects the Judgments were, in fact, entered.

[2] On 11 June 2024, the trial court—apparently *sua sponte*—consolidated the contempt sentences into a single, thirty-day active sentence.

The issues on appeal are whether the trial court erred by: (I) concluding Defendant had forfeited his right to counsel; and (II) holding Defendant in direct criminal contempt.

## Analysis

I.     Forfeiture of Counsel

This Court reviews alleged violations of a defendant's constitutional rights, including the right to counsel, de novo. *State v. Anderson*, 222 N.C. App. 138, 142, 730 S.E.2d 262, 265 (2012) (citations omitted). The right to counsel may be forfeited. *State v. Blakeney,* 245 N.C. App. 452, 460, 782 S.E.2d 88, 93 (2016). " '[F]orfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right.' " *State v. Montgomery*, 138 N.C. App. 521, 524, 530 S.E.2d 66, 69 (2000) (quoting *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d. Cir. 1995)).

"A finding that a defendant has forfeited the right to counsel requires egregious[,] dilatory[,] or abusive conduct on the part of the defendant which undermines the purposes of the right to counsel . . . ." *State v. Smith*, 292 N.C. App. 656, 660, 899 S.E.2d 394, 397 (2024) (alterations in original) (citations and quotation marks omitted). More specifically, forfeiture of the right to counsel can occur when a defendant's conduct "constitutes a '[s]erious obstruction of the proceedings[,]' " *State v. Jones*, 292 N.C. App. 493, 501, 898 S.E.2d 784, 790 (2024) (quoting *State v. Simpkins*, 373 N.C. 530, 538, 838 S.E.2d 439, 447 (2020)), such as when he refuses to

confirm his desire for counsel, refuses to participate, or causes significant delays. *Id.* (citation omitted). " 'Even if a defendant's conduct is highly frustrating,' however, 'forfeiture is not constitutional where any difficulties or delays are not so egregious that they frustrated the purposes of the right to counsel itself.' " *Smith*, 292 N.C. App. at 661, 899 S.E.2d at 398 (alterations and internal quotation marks omitted) (quoting *State v. Atwell*, 383 N.C. 437, 449, 881 S.E.2d 124, 132 (2022)).

In *Smith*, this Court affirmed the trial court's determination the defendant had forfeited his right to counsel where the defendant questioned whether the trial court could be impartial, refused to cooperate with his attorneys, and was "combative and interruptive" during his court appearances. *Id.* at 661, 899 S.E.2d at 398. The defendant had insisted "his attorneys pursue defenses that were barred by ethical rules" and "refus[ed] to cooperate when they would not comply with his requests[,]" ultimately resulting in the withdrawal of six different attorneys. *Id.* The withdrawals resulted in a two-year delay in the case being tried, which this Court determined to be "a significant delay of the proceedings." *Id.* at 662, 899 S.E.2d at 398 (citing *Atwell*, 383 N.C. at 449, 881 S.E.2d at 132). This Court held the totality of the defendant's conduct undermined the purpose of the right to counsel. *Id.*

In the case *sub judice*, the Record indicates Defendant obstructed and delayed the trial proceedings. Defendant's conduct caused his attorneys to withdraw on three occasions between his November 2021 arrest and the March 2023 Forfeiture of Counsel Hearing. Although fewer than the six attorneys in *Smith*, this Court has

noted causing as few as two attorneys to withdraw is conduct which may warrant a forfeiture of the right to counsel. *See State v. Boyd*, 200 N.C. App. 97, 102, 682 S.E.2d 463, 467 (2009) (determining the defendant had forfeited his right to counsel where he was "uncooperative with counsel to the extent that both his court-appointed attorneys withdrew.").

As in *Smith*, the Record shows that while in the district court, Defendant insisted on pursuing causes of action improper under the law and the Rules of Professional Conduct and Criminal Procedure, resulting in the withdrawal of both of his attorneys in the district court proceedings. In superior court, Defendant's continued requests to file baseless motions caused his third attorney to request to withdraw from representation. During the hearing where Defendant's third attorney made his Motion to Withdraw, Defendant made improper discovery requests and questioned the impartiality of the trial court as well as those who "get paid by the State[.]" Defendant criticized the trial court for "trying to trick [him]" and expressed his desire to "settle the matter privately." Defendant's disruptive behavior continued at the Forfeiture of Counsel Hearing, where he continuously interrupted the trial court, questioned the trial court's jurisdiction and the "other party's standing[,]" referred to documents from the "IRS website," and suggested the possibility of proceeding under "admiralty" jurisdiction.

Thus, Defendant obstructed and delayed the trial proceedings. Therefore, Defendant's conduct effectively undermined the purpose of the right to counsel.

Consequently, the trial court did not err in concluding Defendant forfeited his right to counsel.

II.     Criminal Contempt

Defendant argues the trial court erroneously held him in direct criminal contempt without providing him with an adequate opportunity to be heard. Criminal contempt proceedings are governed by statute. *See* N.C. Gen. Stat. § 5A *et seq.* (2023). A trial court's violation of a statutory mandate is an error of law which this Court reviews de novo. *State v. Harding*, 258 N.C. App. 306, 321, 813 S.E.2d 254, 265 (2018) (citation omitted).

> Criminal contempt is direct when the contemptuous act:
>
> (1) Is committed within the sight or hearing of a presiding judicial official; and
>
> (2) Is committed in, or in immediate proximity to, the room where proceedings are being held before the court; and
>
> (3) Is likely to interrupt or interfere with matters then before the court.

N.C. Gen. Stat. § 5A-13(a) (2023). "The presiding judicial official may punish summarily for direct criminal contempt according to the requirements of [N.C. Gen. Stat. §] 5A-14 or may defer adjudication and sentencing as provided in [N.C. Gen. Stat. §] 5A-15." *Id.* "If proceedings for direct criminal contempt are deferred, the judicial official must, immediately following the conduct, inform the person of his intention to institute contempt proceedings." *Id.*

A trial court "may summarily impose measures in response to direct criminal contempt when necessary to restore order or maintain the dignity and authority of the court and when the measures are imposed substantially contemporaneously with the contempt." *Id.* § 5A-14(a) (2023).

> "When a judicial official chooses not to proceed summarily against a person charged with direct criminal contempt or when he may not proceed summarily, he may proceed by an order directing the person to appear before a judge at a reasonable time specified in the order and show cause why he should not be held in contempt of court."

*Id.* § 5A-15(a) (2023). However, "[n]otice and a formal hearing are not required when the trial court promptly punishes acts of contempt in its presence." *In re Owens*, 128 N.C. App. 577, 581, 496 S.E.2d 592, 595 (1998), *aff'd per curiam*, 350 N.C. 656, 517 S.E.2d 605 (1999).

In the instant case, Defendant argues the trial court erred by failing to provide him with an opportunity to respond before holding him in direct criminal contempt.[3] The State, for its part, effectively argues Defendant received an opportunity to be heard because Defendant "continued talking after each notice of contempt[.]"[4]

We believe the present case resembles *State v. Randell*, where the defendant protested briefly after the trial court told him it was going to hold him in contempt

---

[3] Summary notice and summary opportunity to respond are each required by statute. N.C. Gen. Stat. § 5A-14(b) (2023). Here, however, Defendant argues only that he did not receive an opportunity to respond.

[4] To the extent the State has presented arguments Defendant received summary notice, we do not address them because Defendant has not raised that issue on appeal.

for failing to stand when the bailiff had called for all to rise. 152 N.C. App. 469, 470, 567 S.E.2d 814, 816 (2009) (per curiam). Before the trial court had him removed from the courtroom and placed in custody, the defendant asserted the law didn't require him to stand and he had been "getting [his] books." *Id.* at 470-71, 868 S.E.2d at 816. Later that day, the trial court gave the defendant an opportunity to be heard but continued to find him in contempt of court. *Id.* at 471, 567 S.E.2d at 816. This Court reversed because the "defendant was not accorded the summary hearing before being found guilty of contempt[,]" notwithstanding that the defendant had received "ample opportunity to explain himself after the fact[.]" *Id.* at 472, 567 S.E.2d at 817.

Likewise, each instance here where Defendant told the trial court to "add some more" is analogous to the protestations the *Randell* defendant made, as opposed to "an opportunity to present reasons not to impose a sanction[ ]" provided by the trial court. *In re Owens*, 128 N.C. App. at 581, 496 S.E.2d at 594. Thus, we agree Defendant was not afforded summary opportunity to respond, even though he was given a full opportunity to respond the following day. *See Randell*, 152 N.C. App. at 472, 567 S.E.2d at 817.

Moreover, the Record tends to indicate summary proceedings were no longer appropriate when the trial court readdressed the issue the following day. Summary proceedings are appropriate so long as measures are imposed "substantially contemporaneously with the contempt." N.C. Gen. Stat. § 5A-14(a) (2023). This Court has recognized the imposition of summary contempt may be substantially

contemporaneous with the contemptuous conduct even well after the contemptuous conduct occurred. *State v. Robinson*, 281 N.C. App. 614, 625, 868 S.E.2d 703, 711 (2022) (discussing *State v. Johnson*, 52 N.C. App. 592, 279 S.E.2d 77 (1981)). In *Johnson*, this Court upheld the trial court's imposition of direct criminal contempt through summary proceedings where the contemptuous conduct occurred during a "relatively short" bond hearing, "the court was adjudicating, and the defendant was put on notice, that the defendant's conduct was so disruptive and contemptuous[,]" and imposing confinement during the hearing "could well have antagonized the already infuriated defendant and resulted in further disruption and delay of the hearing." 52 N.C. App. at 596-97, 279 S.E.2d at 79-80.

In *Robinson*, however, we clarified that where there is an unnecessary delay between the contemptuous behavior and the imposition of criminal contempt, summary proceedings are no longer appropriate and plenary proceedings in accordance with N.C. Gen. Stat. § 5A-15 must be conducted instead. 281 N.C. App. at 625-26, 868 S.E.2d at 711. Here, as in *Robinson*, the circumstances did not necessitate a delay between Defendant's allegedly contemptuous conduct and the trial court imposing summary contempt. Rather, the Record shows the trial court took a recess before coming back on the Record to specify why he "sentenced contempt six times" and concluding the proceedings. There is no indication that at any point before or after this recess the trial court could not have placed Defendant on notice of the contempt charges, provided him with an opportunity to respond, and drafted and

served Defendant with the Criminal Contempt Orders before concluding the sentencing hearing. *See id.* at 625, 868 S.E.2d at 711.

In fact, the Record tends to show the adjudication and sentencing of Defendant's allegedly contemptuous behavior in the instant case was deferred—not just delayed. Indeed, when Defendant was brought back before the trial court the following day, the trial court stated: "The contempt . . . I've not decided in final how I'm going to handle it." Section 5A-13 is clear that when adjudication and sentencing of direct criminal contempt is deferred, the judicial official must conduct plenary proceedings in accordance with Section 5A-15. *See* N.C. Gen. Stat. § 5A-13(a) (2023). Thus, because the trial court ultimately chose to defer its contempt ruling, summary contempt proceedings were no longer appropriate. Therefore, the trial court was required to provide Defendant with plenary notice and an opportunity to be heard in accordance with N.C. Gen. Stat. § 5A-15 before holding Defendant in direct criminal contempt. Consequently, the trial court erred by holding Defendant in direct, summary criminal contempt.[5]

## Conclusion

---

[5] Because we conclude the trial court erred in holding Defendant in direct criminal contempt without an appropriate opportunity to respond, we do not reach the issue of whether Defendant's conduct was, in fact, contemptuous.

Accordingly, for the foregoing reasons, we conclude there was no error in Defendant's trial and affirm the Judgments.  We reverse the trial court's Criminal Contempt Orders.

NO ERROR IN PART; REVERSED IN PART.

Judges ZACHARY and WOOD concur.