STATE OF NORTH CAROLINA v. NELSON NAPOLEAN JOHNSON

No. 8018SC1194

(Filed 16 June 1981)

**Contempt of Court § 2.1— direct criminal contempt—proceeding substantially contemporaneous with contempt—summary action**

> A proceeding against defendant for direct criminal contempt was substantially contemporaneous with the contempt within the meaning of G.S. 5A-14 where the court at the end of a bond modification hearing found defendant in direct contempt for vocally disrupting the hearing the preceding day, and the court properly acted against defendant summarily without giving defendant a written order to appear and show cause.

APPEAL by defendant from *McLelland, Judge.* Judgment entered 7 August 1980 in Superior Court, GUILFORD County. Heard in the Court of Appeals 9 April 1981.

The defendant, a member of the Communist Workers Party, was charged with engaging in a riot stemming from a confrontation between members of the Party and the Ku Klux Klan in Greensboro on 3 November 1979, in which five people died. Soon after arrest, defendant was released by Order of Pretrial Release on a $15,000 appearance bond.

Defendant moved for revocation and modification of the Order of Pretrial Release. Hearing was held on 6 August 1980 with defendant's counsel (Rosen) present. Assistant District Attorney Knight opposed the motion, alleging that defendant had attacked a police officer. The record reveals the following:

"MR. JOHNSON: That's not true.

Mr. Knight continued with his argument, stating that Mr. Johnson might say that he is not legally responsible for the death of five people on November 3, 1979, whereupon the following ensued:

A SPECTATOR: That's right, the Klan is;

THE BAILIFF: Watch yourselves.

MR. KNIGHT: But he's morally responsible —

MR. ROSEN: I object, Your Honor, that's not part of the facts —

MR. JOHNSON: I object.

MR. ROSEN: This is beyond the scope of what we stipulated to here, Your Honor.

MR. JOHNSON: The Government's agents —

THE COURT: Gentlemen, this is a matter of argument. I'll hear the argument; proceed.

MR. KNIGHT: Whether or not Mr. Johnson is to be detained in the Guilford County Jail is not up to our Office. It's not up to the Court, it's up to him. It's up to him. Can he regulate his conduct so as to respect the rights of others? We hear a lot from him about his rights, but what about the rights of other people to be free from intimidation, the imminent danger of being killed, the presence of violence any time he is supposedly exercising his First Amendment rights? He's not exercising his First Amendment Rights, he's going way beyond that. What he's doing is engaging in conduct which is dangerous. Bring people to the point of frenzy, precipitating and then quietly backing out of —

MR. JOHNSON: With a knife stabbed in my arm —

MR. KNIGHT: — precipitating situation where violence is imminent and on November 3rd it happened, and people died. And we don't want it to happen again.

SPECTATORS: (Several yelling) And the Government killed them. The State is responsible. The State killed them.

MR. JOHNSON: I tell you this is nothing but a continuation of November 3rd.

THE BAILIFF: Court's in session, remain quiet.

MR. JOHNSON: The Judge should allow me to speak.

THE COURT: Take him out.

(Whereupon, deputies approached the Defendant to escort the Defendant out of the Courtroom, wherein a scuffle ensued between the deputies and the Defendant. Spectators were standing and some yelling, 'Let him speak, let him speak.' 'This is supposed to be an open Court, let him speak.' 'Let him be heard.' 'You should let him tell the truth.')

THE COURT: All right, be seated and be quiet or the Courtroom will be cleared. Be seated and quiet or the Courtroom will be cleared.

MR. ROSEN: Your Honor, I'm going to Object to his being ejected from the Courtroom in the way that he was ejected.

THE COURT: The objection is overruled.

(IN THE ABSENCE OF THE DEFENDANT.)

MR. KNIGHT: If Your Honor please, the State at this time would ask that the Court hold Mr. Johnson in Contempt of Court, and so move at this time.

MR. ROSEN: We object to that.

THE COURT: The Court notes the motion and takes no action on it, defers it until we complete the matter at hand."

Oral argument continued. The trial judge then indicated that he wanted to read the written materials submitted. He apparently did so and then allowed the defendant to return to the courtroom.

The State then moved that defendant be held in direct contempt. The court replied that the motion would be considered but not at this time. After final arguments the court recessed for the evening.

On the following morning, with defendant present, the court denied the State's motion for an increased bond.

The court then conducted a hearing on the charge of criminal contempt, and counsel for the parties and the defendant made arguments. The court then found that defendant wilfully disobeyed the orders of the court by speaking out, was warned that he would be removed from the courtroom, but that defendant thereafter joined others in a vocal disruption of the proceedings, and that defendant was then removed from the courtroom. The court then concluded that defendant was in wilful and direct contempt, and ordered that he be imprisoned for 20 days.

*Attorney General Edmisten by Associate Attorney R. Darrell Hancock for the State.*

*Stanback & Stanback by A. Leon Stanback, Jr. for the defendant appellant.*

CLARK, Judge.

The defendant attacks the contempt order on the grounds that the proceeding (1) was not substantially contemporaneous with the contempt as required by G.S. 5A-14, and (2) defendant was not given a written order to appear and show cause as required by G.S. 5A-15.

G.S. 5A-14 provides:

"(a) The presiding judicial official may summarily impose measures in response to direct criminal contempt when necessary to restore order or maintain the dignity and authority of the court *and* when the measures are imposed substantially contemporaneously with the contempt." (Emphasis added.)

This statute, a part of the 1977 N.C. Sess. Laws Ch. 711 (codified as Chapter 5A of the General Statutes which replaced Chapter 5), was based on recommendations of the Criminal Code Commission and became effective 1 July 1978. Chapter 5A draws a sharp distinction between proceedings for criminal contempt (Article 1) and proceedings for civil contempt (Article 2). Article 1 distinguishes between direct and indirect contempt, G.S. 5A-13, which provides that direct contempt may be punished summarily according to G.S. 5A-14, or may defer adjudication and sentencing upon notice by a show cause order as provided by G.S. 5A-15.

Thus, the question before us is whether the trial court had the right to proceed summarily against the defendant (G.S. 5A-14) at the conclusion of the hearing for misconduct committed the preceding day, without entering and serving the defendant with a copy of a show cause order as required by G.S. 5A-15(a). The question may be resolved by determining whether the trial court imposed measures *substantially contemporaneously* with the contempt as provided by G.S. 5A-14(a).

Prior to the enactment of the 1977 N.C. Sess. Laws Ch. 711, the decisions of the Supreme Court of the United States had recognized the problems involved in summary punishment for direct contempt and the need for due process safeguards. In *Sacher v. United States*, 343 U.S. 1, 96 L.Ed. 717, 72 S.Ct. 451 (1952), the court noted that "[s]ummary punishment always, and rightly, is regarded with disfavor . . . ." 343 U.S. at 8, 96 L.Ed. at 723, 72 S.Ct. at 454; in *Offutt v. United States*, 348 U.S. 11, 99 L.Ed. 11, 75 S.Ct. 11 (1954), it was observed that summary punishment is justified by the need for immediate penal vindication of the dignity of the court; and in *Taylor v. Hayes*, 418 U.S. 488, 41 L.Ed. 2d 897, 94 S.Ct. 2697 (1974), it was held that due process requirements for notice and the right to be heard must be extended to persons cited for direct contempt of court where final adjudication and sentencing is delayed until after trial. *See In re Paul*, 28 N.C. App. 610, 222 S.E. 2d 479, *disc. rev. denied*, 289 N.C. 614, 223 S.E. 2d 767 (1976), *see also* the connected case of *Paul v. Pleasants*, 551 F. 2d 575, *cert. denied*, 434 U.S. 908, 54 L.Ed. 2d 196, 98 S.Ct. 310 (1977), decided under old Ch. 5 which has since been replaced by Ch. 5A, General Statutes of North Carolina.

The term "substantially contemporaneously with the contempt" in G.S. 5A-14(a) is construed in light of its legislative purpose of meeting due process safeguards. The word "substantially" qualifies the word "contemporaneously," and clearly does not require that the contempt proceedings immediately follow the misconduct. Factors bearing on the time lapse should include the contemnor's notice or knowledge of the charged misconduct, the nature of the misconduct, and other circumstances that may have some bearing upon the defendant's right to a fair and timely hearing.

The contemptuous conduct in the case before us was committed during a bond hearing, not a trial, and it was obvious that the

hearing would last a relatively short period of time. When the defendant was removed from the courtroom, the court was adjudicating, and defendant was put on notice, that the defendant's conduct was so disruptive and contemptuous that he had lost his right to be present during the hearing. This ruling of the court was tantamount to a finding of direct contempt and summary punishment by depriving the defendant of his right to be present during the hearing. The imposition of imprisonment before the conclusion of the hearing could well have antagonized the already infuriated defendant and resulted in further disruption and delay of the hearing. Under these particular circumstances we find that the punishment on 7 August 1980 was substantially contemporaneous with the direct contempt on the preceding day.

Affirmed.

Judges VAUGHN and WELLS concur.