IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-61

 No. COA21-137

 Filed 1 February 2022

 Gaston County, No. 20 CRS 2313

 STATE OF NORTH CAROLINA

 v.

 LYDIA ROBINSON

 Appeal by Defendant from Order entered 23 September 2020 by Judge Jesse

 B. Caldwell, III, in Gaston County Superior Court. Heard in the Court of Appeals 30

 November 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Milind K.
 Dongre, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Heidi
 Reiner, for defendant-appellant.

 HAMPSON, Judge.

 Factual and Procedural Background

¶1 Lydia Robinson (Defendant) appeals from an Order finding Defendant in direct

 criminal contempt through summary proceedings and ordering Defendant to serve a

 forty-eight-hour term of incarceration. The Record, including evidence adduced at

 trial, reflects the following:
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

¶2 Defendant entered the Gaston County District Court magistrate’s office on 2

 August 2020 seeking a probable cause determination related to alleged death threats

 Defendant received. After a several-minute exchange, and after Defendant left the

 magistrate’s office, Magistrate Mark Oakes (Magistrate) entered an Order finding

 Defendant in direct, criminal contempt through summary proceedings and sentenced

 Defendant to thirty days incarceration. On 4 August 2020, Defendant filed written

 Notice of Appeal to the Gaston County Superior Court pursuant to N.C. Gen. Stat. §

 5A-17. On 23 September 2020, Defendant’s case came on for de novo review in Gaston

 County Superior Court.

¶3 The Magistrate testified as the State’s only witness. According to the

 Magistrate, Defendant entered the magistrate’s office on the afternoon of 2 August

 2020. The Magistrate was “helping other members of the public,” and Defendant

 waited “at the back of the courtroom” until the Magistrate finished helping the other

 people; there were no other people in the courtroom when Defendant “came to the

 window.” The Magistrate testified he knew of Defendant from an earlier locally-

 publicized incident which occurred at “Tony’s Ice Cream” and that he paid attention

 to Defendant’s Facebook posts.

¶4 Defendant attempted to show the Magistrate a “death threat” Defendant had

 received on her cell phone. The Magistrate informed Defendant that the Magistrate

 would not look at Defendant’s cell phone “because cell phones were not permitted in
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

 the courtroom.” Defendant replied, “but I have to show it to you, it’s on my phone.”

 The Magistrate testified that it was policy to have complainants bring in affidavits

 for probable cause determinations, but the Magistrate did not explain this policy to

 Defendant because “[w]e never got to that point.”

¶5 Defendant read the alleged threat from her cell phone to the Magistrate, but

 the Magistrate told Defendant, “according to the general statute it wasn’t a direct

 threat.” According to the Magistrate, Defendant “didn’t like” that determination and

 became “argumentative” but not “angry.” At some point, the Magistrate told

 Defendant “that she needed to leave and take the cell phone out or I would hold her

 in contempt.” Defendant then “tried to repeat it and repeat it and repeat it” for “two

 to three minutes.” The Magistrate did not say anything to Defendant during the two-

 to three-minute period because the Magistrate “was waiting for [Defendant] to leave

 the courtroom.” Defendant held her cell phone up in a manner that led the Magistrate

 to believe Defendant was recording the interaction. Eventually, the Magistrate “shut

 the blinds . . . and said, we’re finished.” The Magistrate then turned to his colleagues

 and said, “[Defendant] was the instigator of the Tony’s Ice Cream.” Defendant

 “started yelling . . . what do you mean, instigator.”

¶6 Defendant eventually left the courtroom and made it to her car. The

 Magistrate informed the sheriff’s office the Magistrate was “holding [Defendant] in

 contempt,” and Defendant returned to the courtroom in the custody of the sheriff’s
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

 office. The Magistrate did not conduct any additional proceedings, but “passed the

 contempt order through and . . . gave it to [Defendant].”

¶7 Defendant did not present any evidence; however, Defendant moved to dismiss

 the charge “pursuant to North Carolina General Statute 5A-14, subsection (b)”

 because the Magistrate had not provided adequate summary notice or an opportunity

 to be heard before the Magistrate issued its Order. The trial court denied the Motion.

 On 23 August 2020, the trial court entered its Direct Criminal Contempt/Summary

 Proceedings/Findings and Order. The trial court sentenced Defendant to forty-eight

 hours incarceration and gave Defendant credit for forty-eight hours already served.

 Defendant gave oral Notice of Appeal in open court.

¶8 On, 22 October 2020, the trial court entered written Findings of Fact and

 Conclusions of Law supporting the Order. The trial court made the following

 pertinent Findings of Fact:

 14. That Magistrate Judge Oakes told the defendant that she was
 going to have to leave the courtroom and stop arguing with him,
 or he would hold her in contempt of court.

 15. That after being told she would have to leave the courtroom
 or be held in contempt of court, and after she had earlier been
 reminded of the posted notice against cell phones in court, and
 told by Magistrate Judge Oakes to put her cell phone away, the
 defendant raised her cell phone up in the direction of the
 magistrate judge to apparently videotape the conversation
 between the two of them. That Magistrate Judge Oakes again
 told her she was going to need to stop what she was doing and
 leave the courtroom, or he was going to hold her in contempt of
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

court. That Magistrate Judge Oakes thus placed her on notice for
a second time that if she did not leave she would be held in
contempt of court.

16. That the defendant remained in the courtroom for some two
to three minutes after being told she would be held in contempt
of court if she did not leave the courtroom . . . . That . . . she
continued to argue with him, freely expressing herself and being
heard in response to being given notice she would be held in
contempt of court if she did not leave . . . .

17. That Magistrate Judge Oakes closed the blinds separating the
magistrate’s po[r]tion of the facility with the public courtroom,
turned to his colleagues and made the statement, “That is the
instigator of the Tony’s incident”. That the defendant was still
in the public area of the magistrate’s courtroom because
Magistrate Judge Oakes heard her begin yelling in the direction
of [the Magistrate], including shouting, “What do you mean
[‘]instigator[’][?]”

....

19. That Magistrate Judge Oakes testified that he then prepared
a written order . . . finding the defendant in contempt of court,
which appears in the record of the court file. That the imposition
of measures in response to the contempt was a sentence of 30 days
in the Gaston County Jail. That this order, among other things,
states that the magistrate gave defendant a clear warning that
the conduct was improper and gave her summary notice of the
charges and a summary opportunity to respond

20. That [the Magistrate] testified he then alerted the sheriff’s
office that he had found the defendant to be in summary criminal
direct contempt of court, and asked them to be bring the
defendant, who by this time had left the courtroom, back to the
magistrate’s courtroom. That he testified that the sheriff’s
deputies located the defendant at her automobile, and escorted
her back into the courtroom.
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

 21. That [the Magistrate] testified that at no time did the
 defendant give an explanation or defense as to why she had her
 cell phone in the courtroom, in violation of posted court rules, his
 repeated directives to put it away, or why she appeared to be
 videotaping her interaction with him.

 22. That the defendant was served by the sheriff in the
 magistrate’s courtroom with the written order of contempt
 sentencing the defendant to jail for 30 days . . . and was taken
 away into custody.

 23. That [the Magistrate] testified that he never saw any portion
 of any video, any livestream, or any pictures from any video made
 of the interaction . . . .

¶9 Based on these Findings, the trial court concluded:

 3. That before finding the defendant in summary direct contempt
 of court, the presiding judicial official in this case twice gave the
 defendant summary notice of the charge of summary direct
 contempt of court, and the conduct she was committing which
 would constitute such contempt, and subsequently made findings
 of fact supporting such notice and summary imposition of the
 measures in response to the contempt. That he found the facts
 were established beyond a reasonable doubt.

 4. That the Court concludes as a matter of law that before
 imposing measures for direct summary contempt, the magistrate
 judge did in fact give the defendant a summary opportunity to
 respond to the contempt by allowing her to talk and argue for two
 to three minutes after he twice gave her summary notice of the
 direct summary contempt . . . . That in arguing with the Court
 during that two to three minute period after twice being given
 summary notice of the contempt charge, . . . and then arguing
 with him, “What do you mean, instigator?”, the defendant
 exercised her summary opportunity to respond to the contempt. .
 ..

 ....
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

 8. That the Court concludes as a matter of law beyond a
 reasonable doubt that during the aforesaid proceedings the
 defendant willfully behaved in a contemptuous manner, and the
 said conduct was direct contemptuous [] conduct, appropriately
 giving rise to the summary direct contempt finding, and
 conclusion by the magistrate judge.

 ....

 10. That by the magistrate judge giving the defendant summary
 notice of the charge, affording her an opportunity to respond by
 arguing with him for two to three minutes . . . and arguing with
 him, “What do you mean, instigator?”, were substantially
 contemporaneous with the aforesaid conduct that constitutes
 contempt. That under existing North Carolina law, the defendant
 was therefore not entitled to counsel as a constitutional or
 statutory right at the direct summary criminal contempt hearing.

 Issue

¶ 10 The dispositive issue on appeal is whether the trial court erred in concluding

 the Magistrate appropriately held Defendant in direct, criminal contempt through

 summary proceedings.

 Analysis

¶ 11 Defendant argues the trial court erred in concluding the Magistrate

 appropriately held her in direct criminal contempt through summary proceedings

 because the Magistrate did not provide Defendant adequate summary notice or an

 opportunity to be heard before the Magistrate held Defendant in contempt and

 Defendant did not exercise any right to be heard in response. “In general, ‘our
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

 standard of review for contempt cases is whether there is competent evidence to

 support the trial court’s findings of fact and whether the findings support the

 conclusions of law and ensuing judgment.’ ” State v. Wendorf, 274 N.C. App. 480, 483,

 852 S.E.2d 898, 902 (2020) (quoting State v. Phair, 193 N.C. App. 591, 593, 668 S.E.2d

 110, 111 (2008)). “Findings of fact are binding on appeal if there is competent

 evidence to support them, even if there is evidence to the contrary.” Id. (citation

 omitted). Our standard of review applies to the superior court’s review which is

 conducted “as if the case had been brought [in the superior court] originally” and with

 “[the magistrate] testifying as a witness with knowledge[.]” Id. at 488, 852 S.E.2d at

 905. We review a trial court’s compliance with the contempt statutes de novo,

 considering the matter anew and freely substituting our judgment for the lower

 court’s judgment. State v. Perkinson, 271 N.C. App. 557, 559, 844 S.E.2d 336, 337

 (2020).

¶ 12 Magistrates have the authority to “punish for direct criminal contempt subject

 to the limitations contained in Chapter 5A of the General Statutes of North Carolina.”

 N.C. Gen. Stat. § 7A-292(a)(2) (2019).

 Criminal contempt is direct criminal contempt when the act:

 (1) Is committed within the sight or hearing of a presiding
 judicial official; and

 (2) Is committed in, or in immediate proximity to, the room
 where proceedings are being held before the court; and
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

 (3) Is likely to interrupt or interfere with matters then before
 the court.

 The presiding judicial official may punish summarily for direct
 criminal contempt according to the requirements of G.S. 5A-14 or
 may defer adjudication and sentencing as provided in G.S. 5A-15.
 If proceedings for direct criminal contempt are deferred, the
 judicial official must, immediately following the conduct, inform
 the person of his intention to institute contempt proceedings.

 (b) Any criminal contempt other than direct criminal contempt is
 indirect criminal contempt and is punishable only after
 proceedings in accordance with the procedure required by G.S.
 5A-15.

 N.C. Gen. Stat. § 5A-13(a-b) (2019).

¶ 13 A judicial official may “summarily impose measures in response to direct

 criminal contempt when necessary to restore order or maintain the dignity and

 authority of the court and when the measures are imposed substantially

 contemporaneously with the contempt.” N.C. Gen. Stat. § 5A-14(a) (2019). However,

 “[b]efore imposing measures under this section, the judicial official must give the

 person charged with contempt summary notice of the charges and a summary

 opportunity to respond and must find facts supporting the summary imposition of

 measures in response to contempt. The facts must be established beyond a

 reasonable doubt.” N.C. Gen. Stat. § 5A-14(b) (2019). “In cases where a court does

 not act immediately to punish acts constituting direct contempt or where the

 contempt is indirect, notice and a hearing is required.” O’Briant v. O’Briant, 313 N.C.
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

 432, 436, 329 S.E.2d 370, 373 (1985). However: “Notice and a formal hearing are not

 required when the trial court promptly punishes acts of contempt in its presence.” In

 re Owens, 128 N.C. App. 577, 581, 496 S.E.2d 592, 595 (1998), aff’d, 350 N.C. 656, 517

 S.E.2d 605 (1999).

¶ 14 Defendant challenges the trial court’s Findings 14, 15, 16 and 19 as not

 supported by the evidence.1 In Finding 14, the trial court found the Magistrate “told

 [Defendant] she was going to have to leave the courtroom and stop arguing with him,

 or he would hold her in contempt of court.” While the evidence does support the

 Finding the Magistrate told Defendant to leave the courtroom and threatened

 Defendant with contempt, it does not support the Finding the Magistrate told

 Defendant to stop arguing with him. Rather the evidence—consisting solely of the

 Magistrate’s own testimony—reflects the Magistrate told Defendant to leave the

 courtroom to take the cell phone out of the courtroom. The testimony further reflects

 the Magistrate did not say anything at all when Defendant attempted to continue to

 1 Defendant acknowledges Finding 19—which recites testimony that the Magistrate entered

 a form order which included certain findings—is facially supported by the evidence, but
 contends the trial court’s finding suggests the trial court may have “embrace[d]” the
 preprinted Findings on the Magistrate’s Order. However, the trial court’s Finding only re-
 states the Magistrate’s testimony and that the Magistrate’s Findings were contained in the
 Magistrate’s Order. The trial court did not seem to adopt those Findings, without its own
 analysis, in its own Order. Therefore, Finding 19—albeit as with many of the trial court’s
 evidentiary Findings, really a mere recitation of evidence than an actual finding—is
 supported by the evidence.
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

 press her point, instead the Magistrate testified he sat there silently for two to three

 minutes before closing the blinds.

¶ 15 In Finding 15, in relevant part, the trial court found after the two to three

 minutes, the Magistrate “again told [Defendant] she was going to need to stop what

 she was doing and leave the courtroom or he was going to hold her in contempt of

 court. That [the Magistrate] thus placed [Defendant] on notice for a second time that

 if she did not leave she would be held in contempt of court.” This portion of Finding

 15 is not supported by the Record. Again, as noted above, while it is true the

 Magistrate told Defendant to leave the courtroom once, there is no evidence the

 Magistrate provided any second warning—instead, testifying he said nothing for two

 to three minutes before closing the blinds.

¶ 16 In Finding 16, the trial court found, “[t]hat the defendant remained in the court

 room for some two to three minutes” after the Magistrate warned Defendant the

 Magistrate would hold her in contempt, and “[Defendant] continued to argue with

 [the Magistrate], freely expressing herself and being heard in response to being given

 notice she would be held in contempt[.]” Defendant contends this Finding is not

 supported because to the extent Defendant was “arguing” she was not doing so in

 response to the contempt charge—but simply reiterating her position she had

 received a death threat. We agree. The Magistrate testified Defendant “tried to

 repeat” her claim over and over for “two to three minutes,” and the Magistrate did
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

 not say anything to Defendant during the two- to three-minute period because the

 Magistrate “was waiting for [Defendant] to leave the courtroom.”

¶ 17 The trial court’s Finding Defendant argued with the Magistrate in response to

 being forewarned of contempt is thus not supported by the evidence. Nothing in the

 Record indicates Defendant argued about whether or not the Magistrate should hold

 her in contempt or was even asked or provided the opportunity to respond as to why

 she should not be held in contempt.2

¶ 18 Defendant next argues the trial court’s remaining Findings of Fact and the

 Record evidence do not support its Conclusions of Law Defendant was “twice” given

 summary notice of the criminal contempt charge and an opportunity to respond to

 the charge. We agree. First, it is clear from the Record that Defendant was not

 “twice” given notice of possible contempt charges. Rather, the Magistrate’s own

 testimony showed he told her once that if she did not remove the cell phone from the

 courtroom he would hold her in contempt. Moreover, it is also evident from the

 Record that to the extent contempt was imposed for continuing to argue about the

 alleged death threat, the Magistrate never provided prior notice of that charge,

 2 For its part, the State contends even if these Findings are not supported by the evidence,

 Findings 18 and 21, which are not directly challenged on appeal, support the trial court’s
 conclusions. Again, however, these Findings constitute nothing more than recitations of the
 Magistrate’s testimony and not true findings of fact. As such, we disregard them as mere
 recitations of testimony.
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

 instead sitting quietly and then closing the blinds. Indeed, the exact basis (or bases)

 upon which Defendant was held in contempt is unclear from this Record. Neither the

 Magistrate’s Order nor the trial court’s Order reflect a clear statement of specifically

 why Defendant was held in contempt (the cell phone, arguing, or both) or, ultimately,

 reflect on what basis Defendant was put on notice she was facing a contempt charge.

 Indeed, even after Defendant was detained and brought back before the Magistrate,

 there is no indication on this Record Defendant was informed of the charges against

 her even then before the Magistrate ordered her jailed.

¶ 19 Moreover, and in turn, the trial court’s supported Findings—to the extent they

 constitute Findings rather than recitations of testimony—and the Record evidence do

 not support the trial court’s Conclusion: “as a matter of law that before imposing . . .

 direct summary contempt, the magistrate judge did in fact give the defendant a

 summary opportunity to respond . . . by allowing her to talk and argue for two to three

 minutes” after the Magistrate gave Defendant notice of summary contempt.

¶ 20 Here, as noted above, the trial court’s Finding Defendant argued with the

 Magistrate “in response to being given notice she would be held in contempt” is not

 supported by the evidence. To the contrary, there is no evidence Defendant was given

 the opportunity to respond to the charge of contempt itself or presented any argument

 as to why she should not be held in contempt in response to notice of a contempt

 charge against her. Thus, this Finding does not support the trial court’s Conclusion.
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

¶ 21 In fact, we have previously held, albeit in an unpublished decision, that a

 magistrate did not afford the defendant summary opportunity to be heard on similar

 facts. See In re Foster, 227 N.C. App. 454, 744 S.E.2d 496 (COA 12-865) (unpublished)

 (slip op. at *18), writ denied, rev. denied, 367 N.C. 222, 747 S.E.2d 533, 534 (2013).

 In Foster, the defendant—a lawyer—came into the magistrate’s office “cuss[ing].” Id.

 at *8-9. The magistrate reminded the defendant that the office was a courtroom and

 “she should watch her language.” Id. at *9. After the defendant continued to use foul

 language, the magistrate asked the defendant to leave and warned her that the

 magistrate would hold the defendant in contempt. Id. The defendant “continued to

 cuss” but walked toward the exit. Id. As the defendant was walking out of the exit,

 the magistrate told her to “come back to the window” because the magistrate “had

 already informed her that I was going to hold her in contempt.” Id. at *9-10. The

 magistrate “ordered officers” to seize the defendant, and officers brought the

 defendant back before the magistrate who “did an initial appearance” to inform the

 defendant the magistrate was holding her in contempt and to give the defendant “a

 copy of the contempt form that [the magistrate] had filled out.” Id. at *10. The State

 argued the defendant had the opportunity to explain herself but “chose instead to

 continue to use profane language[.]” Id. at *17. We reasoned, although the

 magistrate informed the defendant the magistrate was going to hold her in contempt,
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

 the magistrate’s warnings “did not constitute evidence that defendant failed to seize

 an opportunity to respond[.]” Id.

¶ 22 Similarly, here, evidence the Magistrate sat silently for two to three minutes,

 closed the blinds, made an out-of-court remark about Defendant—unrelated to the

 business of the court—to his colleagues, and then let Defendant leave before

 preparing a contempt order and ordering Defendant detained does not constitute

 evidence Defendant failed to seize an opportunity to respond to charges of contempt.

 To the contrary, the evidence reflects during the initial encounter the Magistrate

 never informed Defendant he was, in fact, holding her in contempt and rather than

 give her an opportunity to respond to charges of contempt sat silently before closing

 the blinds to the courtroom, thus providing Defendant no opportunity to respond

 before filling out the form contempt Order and ordering her detained. Further, again,

 after Defendant was detained there is no indication Defendant was afforded any

 notice or opportunity to be heard on the charges against her before being jailed. Thus,

 the trial court’s Conclusion of Law Defendant received summary notice and an

 opportunity to respond to the contempt charge is not supported by the Findings of

 Fact or the evidence of Record.

¶ 23 Moreover, although this case was before the trial court on de novo review as if

 the case had been originally brought before the trial court, it appears evident the trial

 court based its Conclusions and the decretal portion of its Order, at least in significant
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

 part, on the validity of the proceedings leading up to the Magistrate’s Order. Indeed,

 the trial court specifically concluded: “the defendant willfully behaved in a

 contemptuous manner, and the said conduct was direct contemptuous [] conduct,

 appropriately giving rise to the summary direct contempt finding, and conclusion by

 the magistrate judge.” Nevertheless, even absent this Conclusion and for the reasons

 stated above, the evidence does not support the relevant Findings made by the trial

 court and which, in turn, do not support the relevant Conclusions Defendant received

 summary notice and opportunity to be heard to support a direct criminal contempt

 adjudication by summary proceedings.

¶ 24 In fact, under these circumstances, the Record tends to suggest summary

 contempt proceedings by the Magistrate here were not appropriate. Judicial officials

 may only impose summary contempt proceedings “when the measures are imposed

 substantially contemporaneously with the contempt.” N.C. Gen. Stat. § 5A-14(a)

 (2019). Otherwise, judicial officials must use plenary proceedings for contempt when

 the official “may not proceed summarily,” and only after the defendant receives an

 order to show cause and a hearing. N.C. Gen. Stat. § 5A-15 (2019). Regarding

 whether the judicial official acted immediately to punish acts of contempt: “

 ‘substantially contemporaneously with the contempt’ in G.S. 5A-14(a) is construed in

 light of its legislative purpose of meeting due process safeguards . . . and clearly does

 not require that the contempt proceedings immediately follow the misconduct. State
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

 v. Johnson, 52 N.C. App. 592, 596, 279 S.E.2d 77, 79 (1981). “Factors bearing on the

 time lapse should include the contemnor’s notice or knowledge of the charged

 misconduct, the nature of the misconduct, and other circumstances that may have

 some bearing upon the defendant’s right to a fair and timely hearing.” Id. (holding

 the trial court properly imposed direct criminal contempt through summary

 proceedings at the end of a hearing and well after the contemptuous behavior

 occurred where the contemptuous conduct occurred during a “relatively short” bond

 hearing, “the court was adjudicating, and the defendant was put on notice, that the

 defendant’s conduct was so disruptive and contemptuous,” and imposing confinement

 during the hearing “could well have antagonized the already infuriated defendant

 and resulted in further disruption and delay of the hearing”).

¶ 25 Here, the Record indicates the Magistrate closed the blinds to the window

 where the public accesses magistrate services in the courtroom and then made out-

 of-court statements about Defendant unrelated to the business of the court.

 Moreover, the Magistrate did not hold Defendant in summary contempt until after

 he had closed the courtroom and Defendant had left the courtroom for her car at

 which time she was not delaying or disrupting the business of the court. Thus, unlike

 in Johnson, the Magistrate was not conducting a hearing where multiple parties were

 arguing and the dignity and order of the courtroom was paramount to those

 proceedings. Defendant was the only person in the Magistrate’s courtroom at the
 STATE V. ROBINSON

 2022-NCCOA-61

 Opinion of the Court

 time, and she was not delaying or disrupting her own case by remaining. Indeed, the

 Magistrate effectively closed the courtroom when the Magistrate closed the blinds.

 Even though Defendant did not immediately leave after the Magistrate closed the

 courtroom, the proceedings at issue effectively stopped. Although a judicial official

 may allow time to lapse between the contemptuous conduct and imposing summary

 contempt under N.C. Gen. Stat. § 5A-14, the circumstances here did not necessitate

 any such delay. The Magistrate could have placed Defendant on notice of the

 contempt charges, provided an opportunity for her to respond to the specific charges,

 and told the sheriff’s office to seize Defendant and, further, could have drafted and

 served Defendant with the contempt Order before she left the courtroom and made it

 to her car. Thus, at the point the Magistrate closed the blinds and let Defendant

 leave, summary proceedings were no longer appropriate. Therefore, the trial court

 erred in concluding the Magistrate appropriately held Defendant in direct, summary

 contempt.

 Conclusion

¶ 26 Accordingly, for the foregoing reasons, we reverse the trial court’s Direct

 Criminal Contempt/Summary Proceedings/Findings and Order.

 REVERSED.

 Chief Judge STROUD and Judge GORE concur.