IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-61

No. COA21-137

Filed 1 February 2022

Gaston County, No. 20 CRS 2313

STATE OF NORTH CAROLINA

v.

LYDIA ROBINSON

Appeal by Defendant from Order entered 23 September 2020 by Judge Jesse B. Caldwell, III, in Gaston County Superior Court. Heard in the Court of Appeals 30 November 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Milind K. Dongre, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Heidi Reiner, for defendant-appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Lydia Robinson (Defendant) appeals from an Order finding Defendant in direct criminal contempt through summary proceedings and ordering Defendant to serve a forty-eight-hour term of incarceration. The Record, including evidence adduced at trial, reflects the following:

¶ 2          Defendant entered the Gaston County District Court magistrate's office on 2 August 2020 seeking a probable cause determination related to alleged death threats Defendant received.  After a several-minute exchange, and after Defendant left the magistrate's office, Magistrate Mark Oakes (Magistrate) entered an Order finding Defendant in direct, criminal contempt through summary proceedings and sentenced Defendant to thirty days incarceration.  On 4 August 2020, Defendant filed written Notice of Appeal to the Gaston County Superior Court pursuant to N.C. Gen. Stat. § 5A-17.  On 23 September 2020, Defendant's case came on for de novo review in Gaston County Superior Court.

¶ 3          The Magistrate testified as the State's only witness.  According to the Magistrate, Defendant entered the magistrate's office on the afternoon of 2 August 2020.  The Magistrate was "helping other members of the public," and Defendant waited "at the back of the courtroom" until the Magistrate finished helping the other people; there were no other people in the courtroom when Defendant "came to the window."  The Magistrate testified he knew of Defendant from an earlier locally-publicized incident which occurred at "Tony's Ice Cream" and that he paid attention to Defendant's Facebook posts.

¶ 4          Defendant attempted to show the Magistrate a "death threat" Defendant had received on her cell phone.  The Magistrate informed Defendant that the Magistrate would not look at Defendant's cell phone "because cell phones were not permitted in

the courtroom." Defendant replied, "but I have to show it to you, it's on my phone." The Magistrate testified that it was policy to have complainants bring in affidavits for probable cause determinations, but the Magistrate did not explain this policy to Defendant because "[w]e never got to that point."

¶ 5 Defendant read the alleged threat from her cell phone to the Magistrate, but the Magistrate told Defendant, "according to the general statute it wasn't a direct threat." According to the Magistrate, Defendant "didn't like" that determination and became "argumentative" but not "angry." At some point, the Magistrate told Defendant "that she needed to leave and take the cell phone out or I would hold her in contempt." Defendant then "tried to repeat it and repeat it and repeat it" for "two to three minutes." The Magistrate did not say anything to Defendant during the two- to three-minute period because the Magistrate "was waiting for [Defendant] to leave the courtroom." Defendant held her cell phone up in a manner that led the Magistrate to believe Defendant was recording the interaction. Eventually, the Magistrate "shut the blinds . . . and said, we're finished." The Magistrate then turned to his colleagues and said, "[Defendant] was the instigator of the Tony's Ice Cream." Defendant "started yelling . . . what do you mean, instigator."

¶ 6 Defendant eventually left the courtroom and made it to her car. The Magistrate informed the sheriff's office the Magistrate was "holding [Defendant] in contempt," and Defendant returned to the courtroom in the custody of the sheriff's

office.  The Magistrate did not conduct any additional proceedings, but "passed the contempt order through and . . . gave it to [Defendant]."

¶ 7        Defendant did not present any evidence; however, Defendant moved to dismiss the charge "pursuant to North Carolina General Statute 5A-14, subsection (b)" because the Magistrate had not provided adequate summary notice or an opportunity to be heard before the Magistrate issued its Order.  The trial court denied the Motion. On 23 August 2020, the trial court entered its Direct Criminal Contempt/Summary Proceedings/Findings and Order.  The trial court sentenced Defendant to forty-eight hours incarceration and gave Defendant credit for forty-eight hours already served. Defendant gave oral Notice of Appeal in open court.

¶ 8        On, 22 October 2020, the trial court entered written Findings of Fact and Conclusions of Law supporting the Order.  The trial court made the following pertinent Findings of Fact:

> 14. That Magistrate Judge Oakes told the defendant that she was going to have to leave the courtroom and stop arguing with him, or he would hold her in contempt of court.
>
> 15. That after being told she would have to leave the courtroom or be held in contempt of court, and after she had earlier been reminded of the posted notice against cell phones in court, and told by Magistrate Judge Oakes to put her cell phone away, the defendant raised her cell phone up in the direction of the magistrate judge to apparently videotape the conversation between the two of them.  That Magistrate Judge Oakes again told her she was going to need to stop what she was doing and leave the courtroom, or he was going to hold her in contempt of

court. That Magistrate Judge Oakes thus placed her on notice for a second time that if she did not leave she would be held in contempt of court.

16. That the defendant remained in the courtroom for some two to three minutes after being told she would be held in contempt of court if she did not leave the courtroom . . . . That . . . she continued to argue with him, freely expressing herself and being heard in response to being given notice she would be held in contempt of court if she did not leave . . . .

17. That Magistrate Judge Oakes closed the blinds separating the magistrate's po[r]tion of the facility with the public courtroom, turned to his colleagues and made the statement, "That is the instigator of the Tony's incident". That the defendant was still in the public area of the magistrate's courtroom because Magistrate Judge Oakes heard her begin yelling in the direction of [the Magistrate], including shouting, "What do you mean [']instigator['][?]"

. . . .

19. That Magistrate Judge Oakes testified that he then prepared a written order . . . finding the defendant in contempt of court, which appears in the record of the court file. That the imposition of measures in response to the contempt was a sentence of 30 days in the Gaston County Jail. That this order, among other things, states that the magistrate gave defendant a clear warning that the conduct was improper and gave her summary notice of the charges and a summary opportunity to respond

20. That [the Magistrate] testified he then alerted the sheriff's office that he had found the defendant to be in summary criminal direct contempt of court, and asked them to be bring the defendant, who by this time had left the courtroom, back to the magistrate's courtroom. That he testified that the sheriff's deputies located the defendant at her automobile, and escorted her back into the courtroom.

21. That [the Magistrate] testified that at no time did the defendant give an explanation or defense as to why she had her cell phone in the courtroom, in violation of posted court rules, his repeated directives to put it away, or why she appeared to be videotaping her interaction with him.

22. That the defendant was served by the sheriff in the magistrate's courtroom with the written order of contempt sentencing the defendant to jail for 30 days . . . and was taken away into custody.

23. That [the Magistrate] testified that he never saw any portion of any video, any livestream, or any pictures from any video made of the interaction . . . .

¶ 9    Based on these Findings, the trial court concluded:

3. That before finding the defendant in summary direct contempt of court, the presiding judicial official in this case twice gave the defendant summary notice of the charge of summary direct contempt of court, and the conduct she was committing which would constitute such contempt, and subsequently made findings of fact supporting such notice and summary imposition of the measures in response to the contempt. That he found the facts were established beyond a reasonable doubt.

4. That the Court concludes as a matter of law that before imposing measures for direct summary contempt, the magistrate judge did in fact give the defendant a summary opportunity to respond to the contempt by allowing her to talk and argue for two to three minutes after he twice gave her summary notice of the direct summary contempt . . . . That in arguing with the Court during that two to three minute period after twice being given summary notice of the contempt charge, . . . and then arguing with him, "What do you mean, instigator?", the defendant exercised her summary opportunity to respond to the contempt. . . .

. . . .

8. That the Court concludes as a matter of law beyond a reasonable doubt that during the aforesaid proceedings the defendant willfully behaved in a contemptuous manner, and the said conduct was direct contemptuous [] conduct, appropriately giving rise to the summary direct contempt finding, and conclusion by the magistrate judge.

. . . .

10. That by the magistrate judge giving the defendant summary notice of the charge, affording her an opportunity to respond by arguing with him for two to three minutes . . . and arguing with him, "What do you mean, instigator?", were substantially contemporaneous with the aforesaid conduct that constitutes contempt. That under existing North Carolina law, the defendant was therefore not entitled to counsel as a constitutional or statutory right at the direct summary criminal contempt hearing.

## Issue

The dispositive issue on appeal is whether the trial court erred in concluding the Magistrate appropriately held Defendant in direct, criminal contempt through summary proceedings.

## Analysis

Defendant argues the trial court erred in concluding the Magistrate appropriately held her in direct criminal contempt through summary proceedings because the Magistrate did not provide Defendant adequate summary notice or an opportunity to be heard before the Magistrate held Defendant in contempt and Defendant did not exercise any right to be heard in response. "In general, 'our

standard of review for contempt cases is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.'" *State v. Wendorf*, 274 N.C. App. 480, 483, 852 S.E.2d 898, 902 (2020) (quoting *State v. Phair*, 193 N.C. App. 591, 593, 668 S.E.2d 110, 111 (2008)). "Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary." *Id.* (citation omitted). Our standard of review applies to the superior court's review which is conducted "as if the case had been brought [in the superior court] originally" and with "[the magistrate] testifying as a witness with knowledge[.]" *Id.* at 488, 852 S.E.2d at 905. We review a trial court's compliance with the contempt statutes de novo, considering the matter anew and freely substituting our judgment for the lower court's judgment. *State v. Perkinson*, 271 N.C. App. 557, 559, 844 S.E.2d 336, 337 (2020).

¶ 12      Magistrates have the authority to "punish for direct criminal contempt subject to the limitations contained in Chapter 5A of the General Statutes of North Carolina." N.C. Gen. Stat. § 7A-292(a)(2) (2019).

> Criminal contempt is direct criminal contempt when the act:
>
>   (1) Is committed within the sight or hearing of a presiding judicial official; and
>
>   (2) Is committed in, or in immediate proximity to, the room where proceedings are being held before the court; and

(3) Is likely to interrupt or interfere with matters then before the court.

The presiding judicial official may punish summarily for direct criminal contempt according to the requirements of G.S. 5A-14 or may defer adjudication and sentencing as provided in G.S. 5A-15. If proceedings for direct criminal contempt are deferred, the judicial official must, immediately following the conduct, inform the person of his intention to institute contempt proceedings.

(b) Any criminal contempt other than direct criminal contempt is indirect criminal contempt and is punishable only after proceedings in accordance with the procedure required by G.S. 5A-15.

N.C. Gen. Stat. § 5A-13(a-b) (2019).

A judicial official may "summarily impose measures in response to direct criminal contempt when necessary to restore order or maintain the dignity and authority of the court and when the measures are imposed substantially contemporaneously with the contempt." N.C. Gen. Stat. § 5A-14(a) (2019). However, "[b]efore imposing measures under this section, the judicial official must give the person charged with contempt summary notice of the charges and a summary opportunity to respond and must find facts supporting the summary imposition of measures in response to contempt. The facts must be established beyond a reasonable doubt." N.C. Gen. Stat. § 5A-14(b) (2019). "In cases where a court does not act immediately to punish acts constituting direct contempt or where the contempt is indirect, notice and a hearing is required." *O'Briant v. O'Briant*, 313 N.C.

432, 436, 329 S.E.2d 370, 373 (1985).  However: "Notice and a formal hearing are not required when the trial court promptly punishes acts of contempt in its presence." *In re Owens*, 128 N.C. App. 577, 581, 496 S.E.2d 592, 595 (1998), *aff'd*, 350 N.C. 656, 517 S.E.2d 605 (1999).

¶ 14        Defendant challenges the trial court's Findings 14, 15, 16 and 19 as not supported by the evidence.[1]  In Finding 14, the trial court found the Magistrate "told [Defendant] she was going to have to leave the courtroom and stop arguing with him, or he would hold her in contempt of court."  While the evidence does support the Finding the Magistrate told Defendant to leave the courtroom and threatened Defendant with contempt, it does not support the Finding the Magistrate told Defendant to stop arguing with him.  Rather the evidence—consisting solely of the Magistrate's own testimony—reflects the Magistrate told Defendant to leave the courtroom to take the cell phone out of the courtroom.  The testimony further reflects the Magistrate did not say anything at all when Defendant attempted to continue to

---

[1] Defendant acknowledges Finding 19—which recites testimony that the Magistrate entered a form order which included certain findings—is facially supported by the evidence, but contends the trial court's finding suggests the trial court may have "embrace[d]" the preprinted Findings on the Magistrate's Order.  However, the trial court's Finding only restates the Magistrate's testimony and that the Magistrate's Findings were contained in the Magistrate's Order.  The trial court did not seem to adopt those Findings, without its own analysis, in its own Order.  Therefore, Finding 19—albeit as with many of the trial court's evidentiary Findings, really a mere recitation of evidence than an actual finding—is supported by the evidence.

press her point, instead the Magistrate testified he sat there silently for two to three minutes before closing the blinds.

¶ 15 In Finding 15, in relevant part, the trial court found after the two to three minutes, the Magistrate "again told [Defendant] she was going to need to stop what she was doing and leave the courtroom or he was going to hold her in contempt of court. That [the Magistrate] thus placed [Defendant] on notice for a second time that if she did not leave she would be held in contempt of court." This portion of Finding 15 is not supported by the Record. Again, as noted above, while it is true the Magistrate told Defendant to leave the courtroom once, there is no evidence the Magistrate provided any second warning—instead, testifying he said nothing for two to three minutes before closing the blinds.

¶ 16 In Finding 16, the trial court found, "[t]hat the defendant remained in the court room for some two to three minutes" after the Magistrate warned Defendant the Magistrate would hold her in contempt, and "[Defendant] continued to argue with [the Magistrate], freely expressing herself and being heard in response to being given notice she would be held in contempt[.]" Defendant contends this Finding is not supported because to the extent Defendant was "arguing" she was not doing so in response to the contempt charge—but simply reiterating her position she had received a death threat. We agree. The Magistrate testified Defendant "tried to repeat" her claim over and over for "two to three minutes," and the Magistrate did

not say anything to Defendant during the two- to three-minute period because the Magistrate "was waiting for [Defendant] to leave the courtroom."

¶ 17     The trial court's Finding Defendant argued with the Magistrate in response to being forewarned of contempt is thus not supported by the evidence. Nothing in the Record indicates Defendant argued about whether or not the Magistrate should hold her in contempt or was even asked or provided the opportunity to respond as to why she should not be held in contempt.[2]

¶ 18     Defendant next argues the trial court's remaining Findings of Fact and the Record evidence do not support its Conclusions of Law Defendant was "twice" given summary notice of the criminal contempt charge and an opportunity to respond to the charge. We agree. First, it is clear from the Record that Defendant was not "twice" given notice of possible contempt charges. Rather, the Magistrate's own testimony showed he told her once that if she did not remove the cell phone from the courtroom he would hold her in contempt. Moreover, it is also evident from the Record that to the extent contempt was imposed for continuing to argue about the alleged death threat, the Magistrate never provided prior notice of that charge,

---

[2] For its part, the State contends even if these Findings are not supported by the evidence, Findings 18 and 21, which are not directly challenged on appeal, support the trial court's conclusions. Again, however, these Findings constitute nothing more than recitations of the Magistrate's testimony and not true findings of fact. As such, we disregard them as mere recitations of testimony.

instead sitting quietly and then closing the blinds. Indeed, the exact basis (or bases) upon which Defendant was held in contempt is unclear from this Record. Neither the Magistrate's Order nor the trial court's Order reflect a clear statement of specifically why Defendant was held in contempt (the cell phone, arguing, or both) or, ultimately, reflect on what basis Defendant was put on notice she was facing a contempt charge. Indeed, even after Defendant was detained and brought back before the Magistrate, there is no indication on this Record Defendant was informed of the charges against her even then before the Magistrate ordered her jailed.

¶ 19        Moreover, and in turn, the trial court's supported Findings—to the extent they constitute Findings rather than recitations of testimony—and the Record evidence do not support the trial court's Conclusion: "as a matter of law that before imposing . . . direct summary contempt, the magistrate judge did in fact give the defendant a summary opportunity to respond . . . by allowing her to talk and argue for two to three minutes" after the Magistrate gave Defendant notice of summary contempt.

¶ 20        Here, as noted above, the trial court's Finding Defendant argued with the Magistrate "in response to being given notice she would be held in contempt" is not supported by the evidence. To the contrary, there is no evidence Defendant was given the opportunity to respond to the charge of contempt itself or presented any argument as to why she should not be held in contempt in response to notice of a contempt charge against her. Thus, this Finding does not support the trial court's Conclusion.

¶ 21        In fact, we have previously held, albeit in an unpublished decision, that a magistrate did not afford the defendant summary opportunity to be heard on similar facts. *See In re Foster*, 227 N.C. App. 454, 744 S.E.2d 496 (COA 12-865) (unpublished) (slip op. at *18), *writ denied, rev. denied*, 367 N.C. 222, 747 S.E.2d 533, 534 (2013). In *Foster*, the defendant—a lawyer—came into the magistrate's office "cuss[ing]." *Id.* at *8-9. The magistrate reminded the defendant that the office was a courtroom and "she should watch her language." *Id.* at *9. After the defendant continued to use foul language, the magistrate asked the defendant to leave and warned her that the magistrate would hold the defendant in contempt. *Id.* The defendant "continued to cuss" but walked toward the exit. *Id.* As the defendant was walking out of the exit, the magistrate told her to "come back to the window" because the magistrate "had already informed her that I was going to hold her in contempt." *Id.* at *9-10. The magistrate "ordered officers" to seize the defendant, and officers brought the defendant back before the magistrate who "did an initial appearance" to inform the defendant the magistrate was holding her in contempt and to give the defendant "a copy of the contempt form that [the magistrate] had filled out." *Id.* at *10. The State argued the defendant had the opportunity to explain herself but "chose instead to continue to use profane language[.]" *Id.* at *17. We reasoned, although the magistrate informed the defendant the magistrate was going to hold her in contempt,

the magistrate's warnings "did not constitute evidence that defendant failed to seize an opportunity to respond[.]" *Id.*

¶ 22        Similarly, here, evidence the Magistrate sat silently for two to three minutes, closed the blinds, made an out-of-court remark about Defendant—unrelated to the business of the court—to his colleagues, and then let Defendant leave before preparing a contempt order and ordering Defendant detained does not constitute evidence Defendant failed to seize an opportunity to respond to charges of contempt. To the contrary, the evidence reflects during the initial encounter the Magistrate never informed Defendant he was, in fact, holding her in contempt and rather than give her an opportunity to respond to charges of contempt sat silently before closing the blinds to the courtroom, thus providing Defendant no opportunity to respond before filling out the form contempt Order and ordering her detained. Further, again, after Defendant was detained there is no indication Defendant was afforded any notice or opportunity to be heard on the charges against her before being jailed. Thus, the trial court's Conclusion of Law Defendant received summary notice and an opportunity to respond to the contempt charge is not supported by the Findings of Fact or the evidence of Record.

¶ 23        Moreover, although this case was before the trial court on de novo review as if the case had been originally brought before the trial court, it appears evident the trial court based its Conclusions and the decretal portion of its Order, at least in significant

part, on the validity of the proceedings leading up to the Magistrate's Order. Indeed, the trial court specifically concluded: "the defendant willfully behaved in a contemptuous manner, and the said conduct was direct contemptuous [] conduct, appropriately giving rise to the summary direct contempt finding, and conclusion by the magistrate judge." Nevertheless, even absent this Conclusion and for the reasons stated above, the evidence does not support the relevant Findings made by the trial court and which, in turn, do not support the relevant Conclusions Defendant received summary notice and opportunity to be heard to support a direct criminal contempt adjudication by summary proceedings.

¶ 24        In fact, under these circumstances, the Record tends to suggest summary contempt proceedings by the Magistrate here were not appropriate. Judicial officials may only impose summary contempt proceedings "when the measures are imposed substantially contemporaneously with the contempt." N.C. Gen. Stat. § 5A-14(a) (2019). Otherwise, judicial officials must use plenary proceedings for contempt when the official "may not proceed summarily," and only after the defendant receives an order to show cause and a hearing. N.C. Gen. Stat. § 5A-15 (2019). Regarding whether the judicial official acted immediately to punish acts of contempt: " 'substantially contemporaneously with the contempt' in G.S. 5A-14(a) is construed in light of its legislative purpose of meeting due process safeguards . . . and clearly does not require that the contempt proceedings immediately follow the misconduct. *State*

*v. Johnson*, 52 N.C. App. 592, 596, 279 S.E.2d 77, 79 (1981). "Factors bearing on the time lapse should include the contemnor's notice or knowledge of the charged misconduct, the nature of the misconduct, and other circumstances that may have some bearing upon the defendant's right to a fair and timely hearing." *Id.* (holding the trial court properly imposed direct criminal contempt through summary proceedings at the end of a hearing and well after the contemptuous behavior occurred where the contemptuous conduct occurred during a "relatively short" bond hearing, "the court was adjudicating, and the defendant was put on notice, that the defendant's conduct was so disruptive and contemptuous," and imposing confinement during the hearing "could well have antagonized the already infuriated defendant and resulted in further disruption and delay of the hearing").

¶ 25   Here, the Record indicates the Magistrate closed the blinds to the window where the public accesses magistrate services in the courtroom and then made out-of-court statements about Defendant unrelated to the business of the court. Moreover, the Magistrate did not hold Defendant in summary contempt until after he had closed the courtroom and Defendant had left the courtroom for her car at which time she was not delaying or disrupting the business of the court. Thus, unlike in *Johnson*, the Magistrate was not conducting a hearing where multiple parties were arguing and the dignity and order of the courtroom was paramount to those proceedings. Defendant was the only person in the Magistrate's courtroom at the

time, and she was not delaying or disrupting her own case by remaining. Indeed, the Magistrate effectively closed the courtroom when the Magistrate closed the blinds. Even though Defendant did not immediately leave after the Magistrate closed the courtroom, the proceedings at issue effectively stopped. Although a judicial official may allow time to lapse between the contemptuous conduct and imposing summary contempt under N.C. Gen. Stat. § 5A-14, the circumstances here did not necessitate any such delay. The Magistrate could have placed Defendant on notice of the contempt charges, provided an opportunity for her to respond to the specific charges, and told the sheriff's office to seize Defendant and, further, could have drafted and served Defendant with the contempt Order before she left the courtroom and made it to her car. Thus, at the point the Magistrate closed the blinds and let Defendant leave, summary proceedings were no longer appropriate. Therefore, the trial court erred in concluding the Magistrate appropriately held Defendant in direct, summary contempt.

## Conclusion

Accordingly, for the foregoing reasons, we reverse the trial court's Direct Criminal Contempt/Summary Proceedings/Findings and Order.

REVERSED.

Chief Judge STROUD and Judge GORE concur.